## In re SLAUGHTER.

District Court, N. D. Texas, Dallas Division.
March 7, 1935.

Grace N. Fitzgerald, of Sherman, Tex., for debtor.

Coker, Rhea & Vickrey, of Dallas, Tex., for creditor.

ATWELL, District Judge.

On October 12, 1935, this court held that the 1935 amendment to the Frazier-Lemke Act (11 U.S.C.A. § 203) was constitutional. I realized then and I realize now that the act went to the very verge of constitutional authority, if, in truth, it was not outside thereof. In re Slaughter (D.C.) 12 F.Supp. 206. But the appropriate reluctance with which a trial court approaches a declaration of unconstitu-

894

tionality as to an act of Congress, causes us to seek diligently—as we should, of course—for sustaining reasons. I thought that the August 28, 1935, amendment could pass muster if there was read into it and found in it such a discretion as would permit the chancellor to protect the creditor, as well as the debtor, and save the statute from a pre-emptory three-year moratorium if there was no apparent reason to conclude that during such a time the debtor would be able to refinance himself.

 Definitely the national government has no moratorium granting power. The authority of the state of Minnesota to stay proceedings, as sustained in Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A. L.R. 1481, was never intended to indicate that the national government had any such power. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; In re Rahrer, 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572; In re Lowmon (LaFayette Life Ins. Co. v. Lowman), 79 F.(2d) 887, Circuit Court of Appeals, Seventh Circuit, November, 1935.

In accordance with the reference on October 12, 1935, to the conciliation commissioner as referee, proceedings were had in which it developed that the creditor's debt against the land in controversy is approximately $34,000 and that the 360 acres of land are worth approximately $9,000. That the debtor owns a home in the town of Kaufman, and his wife owns another large farm. The debtor testified that if he had $34,000 now, or at the expiration of three years, that he would not use it for the purpose of purchasing this land against which his creditor has the lien. He testified that if he could arrange to get some money, that he thought he would go in the cattle business, and if he made profits from the cattle business, then he would be able to make substantial payments to the creditor. A thousand dollars' revenue from the land for the current year would, under the statute, be disbursed in the settlement of the statutory charges, the remainder going to this creditor. It is thus quite apparent that it would be inequitable and unfair to keep the creditor from going forward and reaping such return as it can on this loan. There is no reasonable probability that it shall be able to receive even a satisfactory interest during the statutory three years.

The situation is not presented where the debt and the value of the land are any-

where near equal. Nor is there any suggestion that the debtor is not amply provided for with both a home and other means of livelihood. It is repellent to the conscience of the chancellor that a debtor situated in so favorable a position should be permitted to hold off his creditor without any substantial evidence of hope of compliance with his obligation.

The complaint, therefore, of the creditor of the action of the conciliation commissioner, acting as referee, in failing to appoint a trustee and to go forward with the sale of the property is sustained, and the referee is directed to take such action.