## In re SLAUGHTER.
### No. 3551.

District Court, N. D. Texas, Dallas Division.
Oct. 12, 1935.

Grace N. Fitzgerald, of Dallas, Tex., for bankrupt.

Coker, Rhea & Vickrey, of Dallas, Tex., for creditor.

ATWELL, District Judge.

The bankrupt filed an application for relief under the old Frazier-Lemke Act in 1934. A conciliation was not agreed upon, and the bankrupt then sought benefits under subsection (s) of that amendment (Bankr. Act § 75 (s), as added by Act June 28, 1934, 48 Stat. 1289).

By agreement of all the concerned parties, the bankrupt was permitted to continue in possession of and to work his farm. Because of the imminence of a decision of unconstitutionality, the case was held in abeyance, before the referee, for three months, and, when the act was de-

clared void, the farmer requested the adjudication in bankruptcy to stand, and a trustee was appointed.

When the amendment of August 28, 1935 (11 USCA § 203 (s), became a law, he invoked that.

The referee, being in doubt as to whether he should administer or whether it should be referred to the conciliation commissioner for Kaufman county, in which county the debtor resides and the property is located, and being in doubt as to the constitutionality of the new act, made his certificate, apparently without objection from any of the parties, to the court, and argument, after a definite setting, has been offered by all interested parties.

The facts disclose that the debtor has approximately 360 acres of land upon which he has not resided for sixty years; that he lives with his wife in the county seat of Kaufman county; that he owes the Bankers Life Insurance Company $33,-000, for the securing of which that company has a lien upon the 360 acres; that the debtor has not paid his taxes for a number of years and the interest is delinquent for approximately 5 years. The property is valued, according to the debtor's testimony, at $12,600. That is about $35 per acre. In order for there to be realized upon it enough to pay the amount due the company, it would have to sell for about $92 per acre.

■ The creditors criticize the 1935 act and claim it is unconstitutional.

A study of the decision of the Supreme Court in Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 S. Ct. 854, 79 L. Ed. 1593, 97 A. L. R. 1106, decided May 27, 1935, does leave some doubt as to the validity of the present act, but that doubt is not of sufficient dignity to give rise to that conviction which the trial court should have before declaring an act of the national Congress unconstitutional. In re Payne (D. C.) 10 F. Supp. 649. Old subsection (s) took from the creditor the right to retain the lien; the right to realize upon the security by a judicial public sale; the right to determine when such sale should be held, subject only to the discretion of the court; the right to protect his interest in the property, by bidding at such sale; and the right to control the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver, for the satisfaction of the debt. The amendment vests all of such rights, though somewhat abbreviated, in the creditor.

The period of probationary holding by the debtor is fixed at 3 years, with the provision that it may be prior thereto, and also with the provision that a sale may be had sooner, if the creditor so determines, and also that the court may shorten that period if it deems it just that it be shortened. The right to bid at a public judicial sale and the power to determine when such sale shall be held, and the control of the property pending such sale, together with the use of the fruit of the property during such waiting period, are all guaranteed in the new statute.

Clever counsel may discover in almost any of these remedial and preservative laws some angle that appears arbitrary, but the basic constitutional authority for bankruptcy laws and the relief of debtors is, in its very essence, arbitrary. The point is, however, that the rights of the creditor and the interests of the debtor are fairly well preserved and recognized in the statute under scrutiny.

■ Paragraph 4 of section 75 (s), as amended in 1935, 11 USCA § 203 (s) (4), provides that the conciliation commissioner, who has been appointed under another portion of the act, shall continue to act as such commissioner, and shall act as referee, when the farmer so amends his petition as to come under this new right. This section also fixes the fee that the commissioner, as such referee, shall receive, and how it shall be paid. We cannot very well ignore the plain letter of the law. It does not say that the conciliation commissioner shall continue to act and *may* act as referee, but it provides that he *shall* continue to act, "and act as referee."

Proceedings, therefore, must be in accordance with those provisions.

■ The creditor maintains that the question of good faith is also involved. In re Fullagar (D. C.) 8 F. Supp. 602. That is, that the amount of the debt, the value of the land, and the entire surroundings make it impossible to expect that the debtor shall ever be able to pay the debt out of this asset, and that the result will be that the creditor will be held back and held off from that which he should be entitled to harvest at once.

I have already called attention to some of the provisions of the statute which

seem to make this position untenable. The latter portion of paragraph 3 of section 75 (s), as amended in 1935, 11 USCA § 203 (s) (3) provides: "If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this act [title]."

With the latter part of paragraph 1 (11 USCA § 203 (s) (1) in mind, paragraph 2 (11 USCA § 203 (s) (2) will be so followed by the court as to put the revenues of encumbered property for the benefit of that property and debt; likewise to arrange the payments consistent with the debtor's ability and the creditor's rights. The debtor's custody is under the control and supervision of the court.

Paragraph 6 (11 USCA § 203 (s) (6), called the emergency provision, is rather difficult to judicially measure, but it seems to give the court the right to determine when the emergency is over "in a locality." See Chastleton Corp. v. Sinclair, 264 U. S. 543, 44 S. Ct. 405, 68 L. Ed. 841. If and when the court finds that highly desired day to have arrived, he may shorten the proceedings provided for in the act and proceed to liquidate the estate. I only mention this emergency provision for the purpose of showing that the whole intention of the act as it now exists is to leave the delay largely in the hands of the conscience of the chancellor and to the perseverance and activity of the creditor and debtor. I do not mention this emergency section with any thought that it is, in itself, constitutional. It clearly lacks that territorial uniformity which every national law must have. There is no legal way to have a statute applicable in Kaufman county and inapplicable in Potter county, or alive in Texas and dead in the Dakotas. The law must be universal, in so far as it reaches or touches the geography of the nation, and likewise it must be uniform in its application to a given class. Midwest Mutual Ins. Ass'n v. De Hoet, 208 Iowa, 49, 222 N. W. 548; Head Money Cases (Edye v. Robertson), 112 U. S. 580, 5 S. Ct. 247, 28 L. Ed. 798.

I do not mean, however, that, because of the faultiness of this section, the sections preceding are likewise illegal. The entire spirit of the legislation seems to comport with similar legislation for corporations and railroads. One of the great differences is that those reorganizations and rejuvenations are largely with the consent of the creditor, while under this act they are in spite of the creditor, with the power of the creditor to appeal to the court for the speeding up of the proceeding.

An order may be drawn referring this cause to Conciliation Commissioner W. H. Barnes, Esq., of Kaufman county, with directions to proceed in accordance with the statute.