## In re DILLER.
### No. 23967–C.

District Court, S. D. California, Central Division.

Dec. 13, 1935.

Willcox & Judson, of Los Angeles, Cal. (Oregon Smith, of Los Angeles, Cal., of counsel), for debtor.

Robert Mack Light, of San Bernardino, Cal., for petitioner Michael Shoemaker.

Bauer, Macdonald Shultheis & Pettit, of Los Angeles, Cal. (John L. Rowland, of Los Angeles, Cal., of counsel), for petitioner John Hancock Mut. Life Ins. Co.

COSGRAVE, District Judge.

William Diller, stating that he was a farmer, filed his petition on September 14, 1934, under section 75 of the Bankruptcy Act, as amended by Acts June 7, June 28, 1934, 48 Stat. 925, 1289, and prayed proceedings in accordance therewith.

After various proceedings under sections 75 and 75 (s), as existing originally, that need not be described in this memorandum, he has secured adjudication under section 75 (s) as it now exists (Bankruptcy Act, § 75 (s), 11 U.S.C.A. § 203 (s), approved August 28, 1935).

A petition to dismiss the debtor's proceeding, or in the alternative to permit the foreclosure of a trust deed covering the farming property, was filed by Michael Shoemaker, the owner of the trust deed. Another petition to permit the foreclosure of a trust deed on property of the debtor, other than his farming property, has been filed by the John Hancock Mutual Life Insurance Company and a hearing was had and evidence taken in support of the two petitions.

At this hearing it was shown that the debtor lives with his family in an exclusive residence district in the city of Los Angeles, fifty miles from his farm, which is in another county. Although interested in farming for some time, he was largely interested in commercial enterprises and subdividing, at least up to the time the latter became unprofitable.

The trust deed held by the John Hancock Mutual Life Insurance Company secures a note for the principal sum of $20,000, with interest at 7 per cent. per annum, and covers the debtor's residence in the city of Los Angeles. The note is overdue, and no interest has been paid since July 1, 1932. The life insurance company has advanced taxes for two years and insurance premiums to keep the property insured, the debtor having made default in such particulars. Taxes for 1934–1935 are delinquent; the company having declined to make such payments. Delinquent interest and taxes amount to $7,434.06. In the proceedings first above referred to, the property was appraised at $21,610.

The Michael Shoemaker trust deed secures a note for $48,000 principal, now overdue, together with $6,000 delinquent interest and a considerable portion of the delinquent taxes for 1931–32. Subsequent taxes it appears have been paid. It covers the farming land consisting of several hundred acres which was appraised by appraisers under the previous proceedings at $46,500. Both trust deeds were in existence at the time of the amendment to the Bankruptcy Act.

Petitioners in both cases urge the unconstitutionality of the act on which the proceedings are based, a question probably pending in every district in the United States, but decided, so far as can be readily determined in the few hereinafter referred to. Due to the great number of cases here where the question is presented, an early decision is imperative.

Under the present act (Bankruptcy Act, § 75 (s), 11 U.S.C.A. § 203 (s), approved August 28, 1935), the farmer petitions that all of his property be appraised and he be allowed to retain possession of it un-

der the terms of the act. It is then appraised at its fair and reasonable market value and (subdivision 1, 11 U.S.C.A. § 203 (s) (1), after his unincumbered exemptions are set aside to him the possession, under the supervision and control of the court, of part or all of the remainder of his property, remains in him subject to all existing mortgages. Thereafter (subdivision 2, 11 U.S.C.A. § 203 (s) (2), for a period of three years, all judicial or official proceedings are stayed and the debtor is permitted to retain possession of his property upon payment of a reasonable rental. The court may require payments on the principal, having in mind among other things his financial rehabilitation. The rental is first devoted to the upkeep of and payment of taxes upon the property.

At the end of three years (subdivision 3, 11 U.S.C.A. § 203 (s) (3), or during that time, the debtor may pay into court the amount of the appraisal of the property and thereupon the court shall turn over full possession and title of the property free of incumbrances to the debtor. In the meantime, upon the request of any creditor, the court must cause a reappraisal of the property to be made, and the debtor must pay the reappraised value. It is provided, however, that, at the written request of any secured creditor, the property shall be sold at public auction.

The act seems to be somewhat ambiguous as to when this right last mentioned shall be exercised. Included as a qualification of the positive provision that the debtor may at any time during the three years pay the appraised value of the property and take it free of incumbrance, the effect to be given to the clause undoubtedly is that the secured creditor can exercise such right at the time that the debtor proposes to pay the appraised value; this may be during or at the end of the three years. This view is made more certain by the language of the provision in subdivision 2 that the courts shall stay all proceedings for a period of three years, during which time the debtor is allowed to retain possession of his property.

The act therefore provides that the property subject to the lien shall be appraised and the debtor given possession of it for a period of three years upon payment of a reasonable rental and all proceedings against him stayed. This rental is applied first to the payment of the taxes and upkeep of the property and the remainder given to the secured creditor. At any time within three years the debtor may pay the appraised value of the property and receive it free of the incumbrance. Whenever this action is proposed, the creditor may demand that the property be sold at public auction.

The decision of the United States Supreme Court in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, condemns the former Frazier-Lemke Act (Bankruptcy Act, § 75 (s), 48 Stat. 1289, as existing May 27, 1935) because its effect was to deny to the bank the following specifically described rights:

(1) The right to retain the lien until the indebtedness thereby secured is paid.

(2) The right to realize upon the security by a judicial public sale.

(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

There is nothing in the decision indicating that this enumeration is exclusive of other rights or any suggestion of relative value among those described.

It may be conceded that under the new act the lienholder retains the lien until the indebtedness is paid because he may finally demand a sale at public auction. We might also concede that for the same reason the right numbered 2 in the opinion of the Supreme Court, being to realize upon the security by a judicial public sale, is also preserved. The new act, however, distinctly deprives the lienholder the right numbered 3; that is, to determine when the sale shall be had, subject only to the discretion of the court. On the contrary, this right is postponed for three years or for a shorter time

at the pleasure of the debtor and not the lienholder. The language of the Supreme Court in Louisville Joint Stock Land Bank v. Radford, supra, upon this point, is plain: "Equally unfounded is the contention that the mortgagee is not injured by the denial of possession for the five years, since it receives the rental value of the property. * * * Radford's argument ignores the fact that in ordinary bankruptcy proceedings and in equity receiverships, the court may in its discretion order an immediate sale and closing of the estate; and it ignores, also, the fundamental difference in purpose between the delay permitted in those proceedings and that prescribed by Congress. When a court of equity allows a receivership to continue, it does so to prevent a sacrifice of the creditor's interest. Under the act, the purpose of the delay in making a sale and of the prolonged possession accorded the mortgagor is to promote his interests at the expense of the mortgagee." 295 U.S. 555, 596, 55 S.Ct. 854, 866, 79 L.Ed. 1593, 97 A.L.R. 1106.

A period of redemption of three months is also given which deprives the owner of the trust deed of a property right. Rights created under trust deeds, such as are involved in this case, have long been an established rule of property in California. Sacramento Bank v. Alcorn, 121 Cal. 379, 53 P. 813; 25 Cal.Jur. 8. On this subject the Circuit Court of Appeals of the Seventh Circuit, in an opinion written by Circuit Judge Sparks on November 15, 1935, says: "We think that in thus extending or tolling the period of redemption for three years beyond that fixed by state statutes, Congress exceeded the powers conferred upon it under the bankruptcy clause of the Constitution."

And further: "We think there is nothing in the constitutional clause conferring upon Congress the control over bankruptcy [authorizing the passage of bankruptcy laws] which authorizes it to change property rights already created by the states." In re Lowmon et al., 79 F.(2d) 887, 890.

It might be conceded that the right numbered 4 is preserved.

Right numbered 5, however, is distinctly destroyed. The control of the property during the period of default is given not to the lienholder, but to the debtor, as also are the rents and profits. It is true that the act provides (subdivision 1, 11 U.S.C.A. § 203 (s) (1), that liens shall remain in full force and effect. This fair assurance is forthwith made entirely hollow by the specific provisions above referred to and is without substance.

Conceding the utmost therefore to the new act, it is plain that the rights numbered 3 and 5 in the Supreme Court's opinion are denied the lienholder under it to the same extent as under the original act. The lienholder is deprived of substantive rights without compensation in violation of the Constitution. The act must therefore be held invalid.

The question has already been considered in three careful and instructive opinions by District Courts—by Judges Briggle and Major of the Southern District of Illinois, In re Young, 12 F.Supp. 30, on October 21, 1935; by Judge Paul of the Western District of Virginia, In re Sherman, 12 F.Supp. 297, on November 8, 1935; and by Judge Scott of the Northern District of Iowa, In re Lindsay, 12 F.Supp. 625, on November 27, 1935—although with some doubt a contrary opinion has been expressed by Judge Atwell of the Northern District of Texas, on October 12, 1935, In re Slaughter, 12 F.Supp. 206.

In Re Lowmon, the case above referred to, decided by the Circuit Court of Appeals of the Seventh Circuit, a certificate of sale on mortgage foreclosure had been issued on August 5, 1933, the purchaser being entitled to a deed on August 5, 1934. On July 23, 1934, the petition of the debtor was filed. The District Court enjoined the execution and delivery of the deed, but this ruling was reversed by the Circuit Court. While it is true the case is not a parallel of the present case, and it might be urged is authority only where a similar state of facts exists, the reasoning of the court and its conclusion above quoted are entirely applicable.

For the reasons given, the bankruptcy proceeding should be dismissed, and it is so ordered.

Exception to the debtor.