## In re COLE.

### No. 10987.

District Court, S. D. Ohio, E. D.

Jan. 22, 1936.

William Lemke, of Washington, D. C., and Elmer McClain, of Lima, Ohio, for debtors.

Fred C. Rector, of Columbus, Ohio, for creditors.

NEVIN, District Judge.

In addition to the instant proceedings, there were fourteen other bankruptcy cases pending in this court, numbered as follows: No. 10948; No. 10854; No. 11007; No. 10811; No. 11165; . No. 11587; No. 11122; No. 11147; No. 11242; No. 11099; No. 11114; No. 11116; No. 11026; No. 11090. In each and all of the cases the question is raised as to the constitutionality of the new subsection (s) of section 75, being section 6 of the Act, approved August 28, 1935 (11 U.S.C.A. § 203 (s), and commonly known as the New Frazier Lemke Moratorium Law.

Some time prior to his death, the late Judge Hough made an arrangement (apparently satisfactory to all interested counsel and parties), whereby a joint brief should be filed on behalf of the secured creditors of the respective bankrupts, and similarly a joint brief submitted by and on behalf of all counsel representing clients who were interested in the cases above referred to by number and then pending. It was understood that subsequently a date would be fixed by the court when counsel were to be given the opportunity to present their views by way of oral argument. Judge Hough died before the arrangement which he had made with counsel could be completed. By agreement, the contemplated plan was, however, carried forward and counsel argued their matters orally to this judge of the court, at Columbus, on December 3, 1935. At the same time the respective cases and the briefs were submitted.

As stated by counsel, the facts of each case are slightly different, yet all bear certain general similarities with respect both to the law and the facts. In all of the cases foreclosure proceedings had been instituted against the farmer debtors by the various secured creditors, and were in divers stages of progress in the state courts within this District. In some cases a decree in foreclosure had been entered by the state court. Thereupon, the farmer debtor filed his petition under section 75 (s) of the Bankruptcy Act, asking to be declared a bankrupt and to have his estate administered under the provisions of that act. Restraining orders were issued by Judge Hough, restraining the secured creditors, who were plaintiffs in the foreclosure cases in the state court, from further proceedings of those actions in the state courts. After the Supreme Court of the United States, in the case of Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A. L.R. 1106, declared section 75 (s) to be unconstitutional, and after the Congress of the United States, on August 28, 1935, had enacted certain amendments, the farmer debtors, complying with the amendment of August 28, 1935, filed what were variously denominated as petitions, applications, or motions to reinstate their cases under the provisions of section 75 (s), as amended.

The secured creditors have raised the constitutional question by different means. Some by filing motions to dismiss the application or petition of the farmer, some by filing applications for the same purpose. Others have filed answers.

In any event, as counsel state, the question for the determination of this court, regardless of how it may have been raised, resolves itself into this: Does the Frazier-Lemke Act, and more particularly section 75 (s) thereof, as amended August 28, 1935, violate the Constitution of the United States?

The new subsection (s) was enacted to replace the original subsection (s), heretofore held by the Supreme Court to be unconstitutional. The original section 75, comprising subsections (a) to (r) is not involved.

The objecting creditors base their argument as to the unconstitutionality of the act in question upon the following: 1. The act in its entirety is not a law upon the subject of bankruptcies in contravention of section 8 of article 1 of the Constitution of the United States, and is, therefore, a law upon a subject with which Congress is expressly prohibited from dealing by the Tenth Amendment to the Constitution. 2. The Frazier-Lemke Act, as amended August 28, 1935 (11 U.S.C.A. § 203 (s), deprives the mortgage creditors, or "secured creditors," of their property without due process of law in violation of the Fifth Amendment to the Constitution of the United States. 3. The Frazier-Lemke Act as amended August 28, 1935, violates section 1 of article 4 of the Constitution of the United States in that it denies full faith and credit to the judgments of the courts of the states.

The conclusion reached by counsel for the creditors is that: "The Frazier-Lemke Act is not an Act upon the subject of bankruptcies. Its sole purpose is to grant a moratorium to farmer debtors—a relief not within the bankruptcy jurisdiction of Congress. The Frazier-Lemke Act deprives mortgage creditors of their property without due process of law by depriving the creditor of his right to realize upon a judicial sale; the right to determine the time of the sale; the right of the mortgage creditor to protect his interest in the property by bidding at the sale; the right to control the property during the period of default. By depriving mortgagees whose mortgages are in default of title to the real estate by extending the time for redemption by mortgagor, and makes an unjust discrimination between se-

cured creditors. The Frazier-Lemke Act, as amended, cannot be sustained on the theory of emergency. The Frazier-Lemke Act, as amended, does not give full faith and credit to the judicial proceedings of the courts of the various states. The law should be declared unconstitutional."

Both in their brief and on oral argument, counsel for the secured creditors have ably set forth their reasons, and have brought to the attention of the court the authorities upon which they rely in support of their conclusions just referred to.

On oral argument, counsel for the secured creditors stated that "I venture to suggest to you that after you (the court) have examined this law and read it through, and after you have examined the opinion of the Supreme Court in the Radford Case, and the opinion of the Court of Appeals of the Sixth Circuit [74 F.(2d) 576], you may write an opinion in three lines and may say with perfect safety: 'This Act is void upon authority of Bank v. Radford.'"

Upon a full consideration of the act itself, the report from the committee on the Judiciary, of the House of Representatives, accompanying the act in question when the new subsection (s) was added, and the case of Louisville Joint Stock Land Bank v. Radford, decided May 27, 1935, this court feels that it cannot follow the suggestion, just referred to, of counsel for the creditors.

The court at the outset must keep in mind two cardinal principles, which are so well established as scarcely to need citation of authority.

First, that while the right and power of judicial tribunals to declare whether legislative acts exceed constitutional limitations is conceded, its exercise is one of grave responsibility and a matter of much delicacy. Courts should approach constitutional questions with great deliberation, exercising their power in this respect with the greatest possible caution and even reluctance. They should never declare a statute void, unless its invalidity, in their judgment, is beyond reasonable doubt. 6 R.C.L. pp. 74, 75.

In no doubtful case will the judiciary pronounce an act to be contrary to the Constitution. To doubt the constitutionality of a law is to resolve the doubt in favor of its validity. "On more than one occasion, this Court has expressed the cau-tious circumspection with which it approaches the consideration of such questions; and has declared, that, in no doubtful case, would it pronounce a legislative act to be contrary to the constitution." Dartmouth College v. Woodward, 4 Wheat. 518, 623, 625, 4 L.Ed. 629.

Second, the legal presumption is that every law enacted by the Congress is constitutional, and the burden of proving any such law to be unconstitutional is upon whomsoever seeks to prove it to be so.

"The courts in a long series of cases have enunciated the general principle that the presumption is in favor of the constitutionality of a statute. This principle has been expressed in many different forms. It has been declared that in no doubtful case should the courts pronounce legislation to be unconstitutional; that to doubt the constitutionality of a law is to resolve such doubt in favor of its validity; that all statutes are of constitutional validity unless they are shown to be invalid; and that the courts will resolve every reasonable doubt in favor of the validity of the enactment. It has been said that every intendment is in favor of its validity, and that it must be presumed to be constitutional unless its repugnancy to the constitution clearly appears, or is made to appear, beyond a reasonable doubt; and that it is only when its invalidity is made to appear clearly and plainly, and in such a manner as to leave no reasonable doubt, that the courts will declare it unconstitutional. Every reasonable presumption must first be indulged in in favor of the validity of the act." 6 Ruling Case Law, "Constitutional Law," section 98, p. 97.

"A presumption in favor of constitutionality is raised by the mere fact of the enactment of a statute by the legislature; and the burden of showing that it is unconstitutional is on the party asserting it." 12 Corpus Juris, "Constitutional Law," section 221, p. 791.

This court is in full accord with the statement that "trial courts should carefully limit the exercise of their power to declare acts of Congress unconstitutional."

The act under consideration was declared unconstitutional by the United States Circuit Court of Appeals of the Seventh Circuit, In re Bertha Lowmon, Debtor (La Fayette Life Insurance Company, Appellant, v. Bertha A. Lowmon, Appellee), 79 F.(2d) 887. It was also invalidated by

two judges sitting together in the District Court for the Southern District of Illinois, Northern Division, in the case of In re William W. Young, 12 F.Supp. 30. Quite recently it was held unconstitutional by District Judge A. Lee Wyman, in an action pending in Sioux Falls, S. D., in which the Union Central Life Insurance Company, Cincinnati, was interested.[1]

On the other hand, the act was held to be constitutional in a decision rendered by District Judge Atwell, on October 12, 1935, in a case pending in the Northern District of Texas. In re Slaughter (D.C.) 12 F.Supp. 206, 207. It was likewise held constitutional in a very recent decision (rendered on the 9th day of January, 1936) by Judge Elwood Hamilton, in the Western District of Kentucky, in Re William A. Reichert (D.C.) 13 F.Supp. 1. In that case, after a very exhaustive review of the various provisions of the act, Judge Hamilton said: "If any provision of this act is susceptible to two constructions, one sustaining its constitutionality and the other defeating it, the first must be adopted. * * * I have concluded that the act is constitutional, construed as heretofore stated." There may be other instances in which the act has been held either constitutional or unconstitutional, which have not been called to, or which have not come to the attention of the court.

In view of the fact that the act, its purposes and effect have been so frequently and so fully discussed by other courts, this court deems it unnecessary to go into any detailed discussion. The court is unable to agree with learned counsel for the secured creditors (as stated upon oral argument) that an opinion from this court "would enrich the literature of the law upon this subject."

■ Upon full consideration, the court finds itself in accord with the conclusion reached by Judge Atwell, that "A study of the decision of the Supreme Court in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, decided May 27, 1935, does leave some doubt as to the validity of the present act, but that doubt is not of sufficient dignity to give rise to that conviction which the trial court should have before declaring an act of the national Congress unconstitutional."

Having in mind the rules of law applicable, and believing thoroughly that a trial court especially should be well convinced as to the invalidity of an act of Congress before it accepts the grave responsibility of setting it aside, the court feels that it cannot say that it has in its own mind that degree of certainty which it should have before declaring the law unconstitutional.

This court, therefore, as to the pending cases herein referred to, and in all other cases in the District where a similar situation exists, will act upon the presumption that the law is constitutional, and will continue so to do until and unless it has been declared otherwise either by the United States Circuit Court of Appeals of this (Sixth) Circuit, or the Supreme Court of the United States.

In order, however, that there may be a final order as to the question involved, and so that counsel may save their exceptions, an entry may be drawn and submitted in each case, reciting that the court finds and concludes that the act is constitutional.

---

[1] In re Buntrock. No written opinion filed.