In re BENNETT.

No. 13112.

District Court, W. D. Missouri, W. D.

Jan. 24, 1936.

---

B. C. Howard, of Kansas City, Mo., for lienholders.

McClintock & Quant, of Kansas City, Mo., for debtor.

OTIS, District Judge.

The debtor seeks the relief provided in subsection (s) of section 75 of the Act of Congress relating to bankruptcy as amended August 28, 1935, 49 Stat. 942, 943, § 6, 11 U.S.C.A. § 203 (s). A secured creditor of the debtor moves for a dismissal of the petition on the sole ground that the act of Congress referred to is unconstitutional. The secured creditor is the owner and holder of a promissory note signed by the debtor, secured by a deed of trust which the creditor now could foreclose were it not for the effect of the questioned act of Congress.

■ Since I have reached the conclusion that this act of Congress does not so clearly violate any of the provisions of the Constitution as that it should not be held to govern the rights of the parties in this case, I shall write no extended opinion. An exhaustive opinion ought always to be written by any court which holds an act of Congress unconstitutional. Its invalidity should be demonstrated beyond a reasonable doubt. That is required by the presumption of validity which attaches to every regularly enacted statute and by the comity. that should govern the· relations between the judicial and legislative branches of government. The same completeness of discussion is not required where a statute is upheld.

The original Frazier-Lemke Act (48 Stat. 1289) was held unconstitutional by the Supreme Court. · Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 865, 79 L.Ed. 1593, 97 A.L.R. 1106.· In the enactment of the· statute now considered (the second so-called Frazier-Lemke Act), the Congress conscientiously and sincerely endeavored to obviate· the defects pointed out in the original act by the Supreme Court. The most cursory reading of the new act reveals in every one of its provisions this highly commendable intent. I am not prepared to say that Congress did not succeed in accomplishing that purpose.

■ The original act was held unconstitutional for that it deprived secured creditors of property without due process of law in violation of the Fifth Amendment. The chief question, therefore, to be considered in connection with the present act is this: Does this act deprive secured creditors of property without due process of law? Another question also has been argued and must be decided: If the new act does not deprive secured creditors of property without due process of law, is it otherwise invalid as not within the power of Congress to enact laws upon the subject of bankruptcies? All that I can say upon that question, however, I said in the case of In re Jones (D.C.) 10 F.Supp. 165. I do not consider there is anything in the opinion in the Radford Case which throws doubt upon the conclusion stated in that connection in the Jones Case. The broad power of Congress concerning bankruptcies is sufficient to uphold the present act, provided it does not contravene the due process clause of the Fifth Amendment.[1]

The draftsman of the new act wrote the act with the opinion of the Supreme Court in the Radford Case in his hand. It was pointed out in that opinion that the former act deprived the secured creditor of five separate property rights, to wit: "(1) The right to retain the lien until the indebtedness thereby secured is paid. (2) The right to realize upon the security by a judicial public sale. (3) The right to determine when such sale shall be held, subject only to the discretion of the court. (4) The right to protect its interest in the property by bidding at such sale whenever held. * * * (5) The right to control meanwhile the property during the period of default, subject only to· the discretion of the court, and to have the rents and profits collected by a receiver· for the satisfaction of the debt." But it would be a superficial view of the opinion in the Radford Case which would lead to the conclusion that the former act was held unconstitutional simply because it took away from the secured creditor one or more of

[1] While the Supreme Court in the Radford Case expressly declines. to define the limit of the power of Congress to enact laws upon the subject of bankruptcies, the discussion of that matter in the opinion certainly suggests that the power is to be broadly construed and that it has been given an ever increasing scope. The court expressly declined even to decide that under the bankruptcy clause of the Constitution Congress might not "abridge the mortgagee's rights in specific property."

these property rights. If that were the correct view, then the present act, of course, must be held unconstitutional, for it undoubtedly does take from the secured creditor (1) the right to determine when the debtor's real estate shall be sold under mortgage or deed of trust and (2) the right to control the property during the period of default.

The taking from the secured creditor of any of the five property rights set out by the Supreme Court was held by that court to be a violation of the due process clause of the Fifth Amendment only if thereby the security of the creditor was substantially impaired.[2] I do not consider that it can be said beyond a reasonable doubt that the present act does substantially impair the creditor's security.

The draftsman of the new act wrote the act not only with the opinion of the Supreme Court in the Radford Case before him, but with the opinion of that court in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, also in his hand. In the latter of these opinions the Supreme Court upheld a statute enacted by the Legislature of Minnesota granting a moratorium for a maximum period of two years to owners of mortgaged real estate in that state upon condition that during the extended time for payment "the reasonable rental value of the property involved" (should be used) "in or toward the payment of taxes, insurance, interest, mortgage or judgment indebtedness" (and so applied) "at such times and in such manner as shall be fixed and determined and ordered by the court." The right of the mortgagee to possess upon the expiration of the moratorium provided in the act was preserved.

The validity of the Minnesota act was attacked on two grounds: First, on the ground that it impaired the obligations of contracts; second, on the ground that it took the property of the mortgagee without due process of law. The Supreme Court upheld the act, notwithstanding both these provisions of the Constitution. Here, of course, we are not concerned with the constitutional provision prohibiting states impairing obligations of contracts.

The due process clause of the Fifth Amendment is identical in its meaning with the due process clause in the Fourteenth Amendment which was considered in the Blaisdell Case. If the Minnesota act upheld in that case is good as against the due process clause of the Fourteenth Amendment, the act here under consideration, if essentially it does no more than the Minnesota act, is good as against the due process clause of the Fifth Amendment.

I do not consider that there is any vital distinction between the Minnesota act and the act here considered. The purpose of each is to effect a moratorium for persons indebted where the debts are secured by mortgages or deeds of trust.

The Minnesota act effects a maximum moratorium of two years. The act here effects a maximum moratorium of three years. While an unlimited moratorium or a moratorium for an extended period undoubtedly would be invalid, it is hardly to be believed that the difference between two years and three is great enough to invalidate an act providing for a three-year moratorium which would be valid if the moratorium was for two years only.

Both the Minnesota act and the act here provide that during the moratorium the secured creditor shall receive reasonable rental from the property. Both the Minnesota act and the act here authorize the court having jurisdiction to shorten the period of the moratorium. Both the Minnesota act and the act here provide for the ultimate realization by the mortgagee of the full value of the property

---

[2] The setting out in the opinion in the Radford Case of the five property rights taken under the original act immediately is, followed by this: "Strong evidence that the taking of these rights from the mortgagee effect a substantial impairment of the security is furnished by the occurrences in the Senate which led to the adoption there of the amendment to the bill declaring that the act 'shall apply only to debts existing at the time this Act becomes effective.'" Reference already had been made in the opinion to Home Building & Loan Association v. Blaisdell, the statute involved in which, so it is said in this opinion (in the Radford Case) was sustained because "found to preserve substantially the right of the mortgagee to obtain, through application of the security, payment of the indebtedness." The whole opinion in the Radford Case clearly indicates that it was not intended to be ruled that the taking away of any one or all of the property rights referred to was a deprivation of property without due process of law unless there was also a substantial impairment of security.

356

covered by the mortgage to the full amount of the debt and accrued interest thereon. The differences between the acts are not substantial, and it cannot be said that, if the first does not violate the due process clause, the second does.

█ The conclusion is that the second Frazier-Lemke Act is not so clearly unconstitutional as that it should be now held to be so.

The motion to dismiss should be, and is, overruled. It is so ordered.