**WRIGHT v. VINTON BRANCH OF MOUN-
TAIN TRUST BANK OF ROANOKE,
VA., et al., and five other cases.**

Nos. 4016, 4019, 4023, 4036, 4051, 4069.

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1936.

S. S. Lambeth, Jr., of Bedford, Va., Ted Dalton, of East Radford, Va., and William Lemke, of Washington, D. C. (Philip Williams, of Winchester, Va., and G. E. Pence, of Woodstock, Va., on the brief), for appellants.

John Strickler and William D. Staples, both of Roanoke, Va., S. V. Kemp, of Lynchburg, Va., and F. S. Tavenner, of Woodstock, Va. (Samuel H. Williams and B. B. Campbell, both of Lynchburg, Va., Showalter, Parsons, Kuyk & Coleman, of Roanoke, Va., John S. Draper, of Pulaski, Va., Hal C. Tyler, of East Radford, Va., and W. J. Henson, of Roanoke, Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These are six appeals from the same district in cases wherein relief was sought under the amended Frazier-Lemke Act (Bankr.Act § 75(s), Act Aug. 28, 1935, § 6, 49 Stat. 942, 943, 11 U.S.C.A. § 203(s). The learned judge below, for reasons set forth in his opinion in Re Sherman (D.C.) 12 F.Supp. 297, denied the relief prayed in each of the cases on the ground that the act was violative of rights guaranteed by the Constitution, and the debtors have appealed. The appeals were heard together in this court and together they present but one question, i. e. the constitutional validity of the amended Frazier-Lemke Act.

In Louisville Bank v. Radford, 295 U. S. 555, 55 S.Ct. 854, 865, 79 L.Ed. 1593, 97 A.L.R. 1106, the original Frazier-Lemke Act (Bankr.Act § 75(s) was held violative of the Fifth Amendment to the Constitution of the United States, in that it deprived the holder of an antecedent Kentucky mortgage of the following rights with respect to his security, viz.:

"(1) The right to retain the lien until the indebtedness thereby secured is paid.

"(2) The right to realize upon the security by a judicial public sale.

"(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

"(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt."

The amended act by its terms applies to existing mortgages as well as to those subsequently executed and those here involved were in existence at the time of its passage. As pointed out by the learned judge below, the rights of the secured creditor under the laws of Virginia are not materially different, for the purposes of this inquiry, from the rights recognized by the law of Kentucky (Code Va. § 5167); and we agree with him that these rights, as specified in paragraphs 3 and 5 of the above quotation, are violated by the amended act, i. e. the right to determine when the mortgage sale shall be held, subject only to the discretion of the court, and the right to control meanwhile the property, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

The amended act provides that any farmer who fails to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition or extension proposal, or who feels aggrieved by the composition or extension, may ask that he be adjudged a bankrupt, that his property be appraised, that the exemptions allowed by state law be allotted to him, and that he be allowed to retain possession under the supervision and control of the court of the remainder of his property. The act then prescribes the duty of the court in the premises in subsections (1), (2), and (3), of section 75 (s), as amended, which are the ones material to the inquiry before us, and which for convenience of reference are inserted in the margin.*

* "(1) After the value of the Debtor's property shall have been fixed by the appraisal herein provided, the referee shall issue an order setting aside to such debtor his unencumbered exemptions, and his unencumbered interest or equity in his exemptions, as prescribed by the State law, and shall further order that the possession, under the supervision and control of the court, of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor, as herein provided for, subject to all existing mortgages, liens, pledges, or encumbrances. All such existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such mortgages, liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors, as their interests may appear.

"(2) When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannual-

An examination of these sections discloses that, with respect to the time of foreclosure, the court is required to enter an order that "the possession, under the supervision and control of the court, of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor, as herein provided for," subject to existing mortgages, etc.; and the court is required to stay foreclosure proceedings for a period of three years. The court, it is true, may require the debtor to make payments on the principal of the indebtedness "not inconsistent" with his "ability to pay, with a view to his financial rehabilitation," and may direct sale if the debtor fails to comply with this requirement. And, under section 6 of the act, the court may shorten the stay of proceedings if it shall determine that the emergency which gave rise to the act has ceased to exist. But we think it clear that these are far from preserving to the secured creditor the right to immediate foreclosure on default which is given him by the law of Virginia; and they are far different from the judicial discretion exercised by a court of equity in an ordinary foreclosure proceeding, with respect to which the rights of a mortgage creditor may be presumed to have been acquired. See Louisville Bank v. Radford, supra, 295 U.S. 555, 597, 55 S.Ct. 854, 866, 79 L.Ed. 1593, 97 A.L.R. 1106.

Likewise as to the control of the property preceding foreclosure, an examination of the statute discloses that, instead of providing for possession by a receiver with application of the rents and profits to the mortgage debt, the debtor is permitted to retain possession, upon such rent as the court may determine, to be applied first to taxes upon the upkeep of the property, i. e. in a manner which will be for the benefit of the debtor, whether the creditor wishes such application or not. This is clearly not the same thing as the right to which the creditor is entitled under the law of Virginia, or the equivalent thereof.

ly for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings, the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property. Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear. The court, in its discretion, if it deems it necessary to protect the creditors from loss by the estate, and/or to conserve the security, may order sold any unexempt perishable property of the debtor, or any unexempt personal property not reasonably necessary for the farming operations of the debtor, such sale to be had at private or public sale, and may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this title, and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation.

"(3) At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor: Provided, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this title. If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this title."

Cases in which this statute has been considered and held invalid are United States Nat. Bank of Omaha v. Pamp (C.C.A.8th) 83 F.(2d) 493; In re Lowmon (C.C.A.7th). 79 F.(2d) 887; In re Young (D.C.Ill.) 12 F.Supp. 30; In re Lindsay (D.C.Iowa) 12 F.Supp. 625; In re Davis (D.C.N.Y.) 13 F.Supp. 221; In re Diller (D.C.Cal.) 13 F.Supp. 249; In re Tschoepe (D.C.Tex.) 13 F.Supp. 371; In re Schoenleber (D.C.Neb.) 13 F.Supp. 375; In re Wogstad (D.C.Wyo.) 14 F.Supp. 72. Contra, see Dallas Joint Stock Land Bank v. Davis (C.C.A.5th) 83 F.(2d) 322; In re Slaughter (D.C.) 13 F.Supp. 893; Id. (D.C.) 12 F.Supp. 206; In re Bennett (D.C.) 13 F.Supp. 353; In re Cole (D.C.) 13 F. Supp. 283; In re Reichert (D.C.) 13 F. Supp. 1.

The decision of the Supreme Court in Louisville Bank v. Radford, supra, as we interpret it, is that Congress may not in the exercise of the bankruptcy power substantially impair the rights of a mortgagee of a bankrupt's property, and that to take from him the right to determine when the sale of the mortgaged property shall be held and to control the property in the meantime is such substantial impairment. We can see no ground for distinction in that the amended act grants a moratorium of three instead of five years, or that the court is authorized to shorten the moratorium if it shall determine that the emergency has ceased to exist. Even if the last-named provision be constitutional, it does not remove the objection that during the moratorium allowed the rights of the mortgagee are abridged; but it would seem that such a provision violates the constitutional requirement of geographical uniformity and would be void for that reason even if not given the effect of invalidating the remainder of the act. A law which extends the benefit of its provisions to certain judicial districts of the country and not to others, depending upon a finding by the courts as to local financial conditions, is manifestly not a uniform law on the subject of bankruptcies within the constitutional requirement (Const. art. 1, § 8, cl. 4). United States Nat. Bank of Omaha v. Pamp (C.C.A.8th) 83 F.(2d) 493, 502.

In No. 4023, appeal was not sought under section 24(b) of the Bankruptcy Act (11 U.S.C.A. § 47(b) but was allowed by the judge below under section 25(a) of the act (11 U.S.C.A. § 48(a). As the order appealed from dismissed a petition for adjudication under subsection (s) of section 75 of the Bankruptcy Act (as amended) and refused to adjudicate petitioner a bankrupt thereunder, we think that appeal under section 25(a) was proper, although appeal under section 24(b) is proper from an order denying injunctive relief under the statute. Bradford v. Fahey (C.C.A.4th) 76 F.(2d) 628.

Affirmed.