## In re DAVIS et al.
### Nos. 3572, 3573.

District Court, N. D. Texas, Dallas Division.
Nov. 10, 1936.

Renfro, McCombs & Kilgore, of Dallas, Tex., for excepting creditors.

John Davis, of Dallas, Tex., for debtors.

ATWELL, District Judge.

Some time ago these debtors applied for relief from a state foreclosure decree, and the Dallas Joint Stock Land Bank of Dallas, Tex., the mortgagee, moved to dismiss the application. From an order refusing such dismissal and referring the case to the special conciliation commissioner, the creditor appealed. The Circuit Court of Appeals affirmed the judgment. Dallas Joint Stock Land Bank v. Davis, 83 F.(2d) 322.

In accordance with such directions, proceedings were had by both creditors and debtors before the commissioner; the debtors moving for appraisal as required by the statute, and a three-year stay; the creditors applying for a foreclosure. The commissioner ordered the appraisal, to which objections were filed. Bankr. Act, § 75(s), as amended, 49 Stat. 943, § 6 (11 U.S.C.A. § 203(s). And evidence was taken as to its correctness and an order was finally made by the commissioner appraising the land at $50 per acre. To this procedure, the debtors preserved exception. In the meantime, the creditors had filed an application for foreclosure. Foreclosure was denied, and a stay of three years was ordered, fixing the rental at one-fourth of the cotton and one-third of the corn to be raised upon the farm, and . $20 per year for the annual rental of the pasture lands. To this action the creditor excepted.

The record discloses that there are 277 acres involved. That the debtors are father and son. That the amount due the Dallas Joint Stock Land Bank is $15,562.12. That about 125 acres are in cultivation. The rest is what is called pasture land. The pasture land is fairly well covered with Johnson grass, and the same sort of grass plagues, to some extent at any rate, the portion that is farmed. At $50 per acre, the land would bring less than the amount of the indebtedness to the Land Bank. The testimony shows no potential field for the securing of funds to pay the debt, even at the expiration of three years. Taxes for 1934 and 1935 are delinquent. Small payments have been made since 1930, when the land was purchased by the debtors, but during no year has the amount due been entirely satisfied. The 1932 amount that was paid, and which was much less than the required amount, was borrowed by the debtors. The 1935 revenue from the farm was approximately $500, the major portion of which was required to satisfy indebtedness for seed. The 1936 proceeds have netted $167. The amount that is required to pay the Land Bank is $375 semiannually, or a total of $750 per year. Mr. Davis and his son have no source whatever from which they can expect assistance in the meeting of their obligation. They rely entirely upon what is produced from the land. Another land bank has offered to lend $4,900, and the United States Re-Settlement Organization has offered to buy the property for $9,000.

In order to save the amendment from the constitutional objections that are urg-

ed against it, and which were fatal to its predecessor, Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, it is necessary for the chancellor who is administering the estate of the debtor, in order to protect both him and his creditor, to find some equity that should be saved for the debtor, and out of which capital entity, there may be reasonable expectation that the creditors' three-year wait shall not have been in vain. In re Slaughter (D.C.) 13 F.Supp. 893; Dallas Joint Stock Land Bank v. Davis (C.C.A.) 83 F.(2d) 322; In re Slaughter (D.C.) 12 F.Supp. 206.

The debtors here seem to be hopelessly involved. They have struggled along for approximately six years, and are worse off now than they were at the beginning of the struggle. The return to the creditors for another three-year wait is quite insubstantial. A rental of $20 for more than an hundred acres, together with one-fourth of the cotton and one-third of the corn that may be raised upon that portion which is tilled, is much less than a very low interest rate would be on the indebtedness. Besides, there is the imminence of foreclosure and loss at the hands of the tax collector.

An equity for the debtor is not seen and a deprivation of the creditors' rights is quite apparent.

An order may be drawn directing the commissioner, as referee, to proceed to sell the property for the benefit of the creditors.