COWHERD v. PHŒNIX JOINT STOCK LAND BANK OF KANSAS CITY et al.*

No. 11248.

Circuit Court of Appeals, Eighth Circuit.

Oct. 26, 1938.

W. A. Franken, of Carrollton, Mo., and William Lemke, of Washington, D. C., for appellant.

John F. Reinhardt and Frank P. Barker, both of Kansas City, Mo. (S. J. Jones and G. C. Jones, both of Carrollton, Mo., on the brief), for appellees.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from two orders, one dated April 30, 1938, refusing to adjudge debtor a bankrupt and dismissing the proceedings as to the Phœnix Joint Stock Land Bank, one of his two secured creditors; and the other order, dated May 11, 1938, dismissing said cause on the motion of the Carrollton Investment Company, his other secured creditor. There were no unsecured creditors.

The proceedings involved herein were as follows: The debtor, Edgar Cowherd, of Carroll County, Missouri, filed his petition for composition or extension under Sec. 75 (a) to (r) of the Bankruptcy Act, 11 U.S.C.A. § 203 (a–r), on August 7, 1936, and on that day it was approved as properly filed, and was referred to the Conciliation Commissioner.

On November 10, 1936, an application was made by the debtor for an extension of time within which to work out a composition or extension with his creditors, and this was granted.

On February 6, 1937, the Conciliation Commissioner reported to the Court that the debtor's offer of composition and extension had been rejected by his creditors; and on February 6, 1937, the Court entered an order discharging the Conciliation Commissioner.

On February 6, 1937, the debtor filed his amended petition in the District Court praying to be adjudged a bankrupt under the Frazier-Lemke Act, Sec. 75(s) of the Bankruptcy Act, 11 U.S.C.A. § 203(s); and on February 12, 1937, the Phœnix Joint Stock Land Bank filed its motion to dismiss debtor's amended petition.

On February 13, 1937, an order was signed dismissing said amended petition and setting aside all orders restraining the Phœnix Joint Stock Land Bank, who held a deed of trust upon the land of debtor, from foreclosing said deed. Said amended petition was dismissed on the sole ground that Sec. 75(s) of the Bankruptcy Act was unconstitutional, and the Court reserved jurisdiction of the other grounds for dismissal.

At the time this order was entered, Subsection 75(s) had been declared unconstitutional as applied to the facts under consideration in the case at bar by both the Circuit Court of Appeals of the Eighth Circuit and the Fourth Circuit. U. S. Na-

tional Bank of Omaha v. Pamp, 8 Cir., 83 F.2d 493; and Wright v. Vinton Branch of Mountain Trust Bank, 4 Cir., 85 F.2d 973.

Thereafter an appeal was taken from said order to this Court. The United States Supreme Court having in the meantime held the amendment of August 28, 1935, to the Frazier-Lemke Act constitutional (Wright v. Vinton Branch, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455), the Circuit Court of Appeals reversed the judgment of the lower Court and remanded the case for further proceedings. Cowherd v. Phoenix Joint Stock Land Bank, 8 Cir., 94 F.2d 329.

The mandate reversing said judgment was filed February 10, 1938.

On March 10, 1938, the debtor filed a motion to be adjudged a bankrupt under his amended petition, or, if the offer of composition and extension was insufficient, that the matter be re-referred to the Concilation Commissioner.

On March 11, 1938, the Phoenix Joint Stock Land Bank filed its amended and supplemental petition to dismiss debtor's amended petition ab initio, on the following grounds:

1. That the offer of compromise and extension did not include an equitable and feasible method of liquidation for the debtor or for his financial rehabilitation, and was not for the best interest of his creditors, and constituted an attempt to impair and reduce the first and prior lien of the petitioner.

2. That there was no reasonable hope for the financial rehabilitation of the debtor, and that, therefore, the petition and amended petition filed by him were not filed in good faith, and that the proceedings under Sec. 75 could not be expected to have any effect beyond postponing inevitable liquidation.

On April 27, 1938, the Carrollton Investment Company, another secured creditor, also filed its motion to dismiss debtor's proceedings, claiming that the Court should not grant a stay of further relief to this debtor because the emergency upon which said relief was based no longer existed, the debtor having failed to make any payments on principal, interest or taxes; that the debtor was hopelessly bankrupt and there was no reasonable possibility or probability of a successful rehabilitation

of debtor, and that the relief was not sought by debtor in good faith.

Hearings upon the above motions were held by the District Court on April 28, 1938. At said hearings, the debtor testified that he had two farms: one of 478 acres, upon which the Phoenix Joint Stock Land Bank had a mortgage for approximately $35,000 (there also being a second mortgage thereon of $15,000); that this farm is worth about $25,000; that his other farm consists of 427 acres, upon which the Carrollton Investment Company has a mortgage of approximately $38,000, the value of said farm being about $17,-000; that the rental value of the farms is about $3 an acre, and the fair market value of the land is $40 an acre.

Debtor further testified that while the former appeal (from the judgment of February 13, 1937) in this Court was pending, all of his personal property was sold under chattel mortgage by the banking house of Wilcoxson & Company, or the Carrollton Investment Company, for $5,605.15, and this was applied on his indebtedness; and that since the institution of this suit, he has acquired personal property amounting to $5,102.

While said former appeal was pending, the Phoenix Joint Stock Land Bank also foreclosed its deed of trust and bid in the property, receiving the trustee's deed therefor dated March 20, 1937.

Debtor further testified that he had been a farmer all his life, and if he were allowed an extension, at the end of that period he thought he would be able to pay the then fair market value of his land. There was other testimony to this same effect.

The Court filed the two orders heretofore mentioned from which this appeal was taken, and thereafter, on May 6, 1938, debtor filed a motion for rehearing, which was overruled on May 28, 1938. The Court in its opinion overruling said motion held that the debtor must make a showing that he will be able to refinance himself within three years, which means that he will be able to pay his debts in full; that this requirement is not met by his making a showing that he will be able merely to pay the appraised value of the mortgaged property.

Appellant farmer-debtor contends that the Court erred in refusing to adjudge the debtor a bankrupt, because Sec. 75(s) of

the Bankruptcy Act is both a bankruptcy and a moratorium statute; that the right to an adjudication in bankruptcy stands on the same basis as if a voluntary petition in bankruptcy had been filed; and the extension of three years is conditional upon the reasonable probability of the debtor's being able to rehabilitate himself within the three-year period.

Appellant farmer-debtor further contends that the amount of the indebtedness of the farmer-debtor had no bearing upon his ability to refinance himself, because under Sec. 75(s), the personal liability of the debtor for his provable debts is discharged by proceedings under that section to the same extent as in general bankruptcy proceedings; and, therefore, it is only necessary for debtor to show that he has reasonable hope for providing for the payment of the fair market value of his property within three years.

Appellant farmer-debtor further contends that the evidence shows that he, the debtor, has reasonable hope of financial rehabilitation, and that such rehabilitation means the ability of the debtor of providing within three years for the payment of the appraised or fair market value of the land.

The contention of the mortgagees is that they were entitled to a dismissal of these proceedings unless the debtor could show a reasonable probability that he could pay off the mortgage indebtedness within the three-year period.

The Court below was of the opinion that the debtor had not shown a reasonable probability of being able to refinance himself within the three-year period, and that the word "re-finance" meant something more than the payment of a reasonable rental and the appraised value of the farms.

The broad question presented, as we see it, is whether a court of bankruptcy may dismiss a petition under Sec. 75(s) when it appears that a farmer-debtor has no present or potential equity over and above the encumbrances on his farm, and no reasonable hope of being able to pay off or refund such encumbrances if a three-year extension is granted, and it also appears that those holding the encumbrances are unwilling to compromise their claims for less than the full amount.

It is argued that Congress intended that any farmer-debtor should have the bene-fits of Sec. 75(s) upon a showing that he could pay the reasonable rental value of his farm during the period of the extension and pay into court the appraised or reappraised value of his property, as provided in paragraph (3) of subsection (s).

A reading of the case of Wright v. Vinton Branch, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455, indicates that the debtor's contentions cannot be sustained. The Court points out that, under Sec. 75(s), mortgagees retain their liens upon the land until the indebtedness secured thereby is paid, and that they have the right to realize upon the security by judicial public sale. (Page 458 of 300 U. S., page 559 of 57 S.Ct.). It is pointed out that the claim that subsection (s) was unconstitutional rested mainly upon the contention that the Act gives to the mortgagor the absolute right to a three-year stay. (Page 460, 57 S.Ct. page 560). The Court then construes the Act as giving no such absolute right. On page 462, 57 S.Ct. on page 562, the Court says: "Paragraph 3 also provides that 'if * * * the debtor at any time * * * is unable to refinance himself within three years,' the court may close the proceedings by selling the property. This clause must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period."

And in a footnote accompanying this statement, it is said: "The offer of composition must be in good faith, * * * and if the debtor is beyond all reasonable hope of financial rehabilitation, and the proceedings under section 75 cannot be expected to have any effect beyond postponing inevitable liquidation, the proceedings will be halted at the outset."

The Court also says on page 463, 57 S.Ct. on page 562: "Since the language of the Act is not free from doubt in the particulars mentioned, we are justified in seeking enlightenment from reports of Congressional committees and explanations given on the floor of the Senate and House by those in charge of the measure. When the legislative history of the bill is thus surveyed, it becomes clear that to construe the Act otherwise than as giving the courts broad power to curtail the stay for the protection of the mortgagee would

228

be inconsistent not only with provisions of the Act, but with the committee reports and with the exposition of the bill made in both Houses by its authors and those in charge of the bill and accepted by the Congress without dissent. We construe it as giving the courts such power."

Our opinion is that, under the interpretation placed by the Supreme Court upon the language of Sec. 75(s), a farmer-debtor who has no equity, either present or potential, in his farm, and no reasonable prospects of being able to pay or refund the liens upon it within a three-year extension, is not entitled to relief under that section.

■ Judges Nordbye and Joyce, in the case of In re Anderson, D.C., 22 F.Supp. 928, considered the question as to what constituted a reasonable hope of financial rehabilitation. Their conclusion is well stated on page 932: "There must appear a reasonable probability that if given the benefits of the act, the debtor will be able to pay a reasonable rental, exercise good husbandry in the management of the operations of the farm, and make suitable provisions to refinance himself, so that he can conserve his equities by either paying his secured creditors in full, or with their consent, the appraised value of his property. If the granting of a three-year stay cannot be reasonably expected to result in saving or preserving his equities in his real or personal property, then he cannot be considered as one who is able to rehabilitate himself. A fortiori, if he has no equities to preserve, and if it is extremely improbable that any equities will materialize during the three-year period, then there is nothing for the act to administer."

Other cases which appear to support the view that a farmer debtor who has no present or potential equity in his property and no reasonable chance of paying or refunding in full the mortgages upon it, may not take advantage of Sec. 75(s), are: Massey v. Farmers & Merchants Nat. Bank & Trust Co., 4 Cir., 94 F.2d 526; Pearce v. Coller, 3 Cir., 92 F.2d 237; Dallas Joint Stock Land Bank v. Davis, 5 Cir., 83 F.2d 322; In re Cox, D.C., 22 F. Supp. 925; In re Palmer, D.C., 21 F.Supp. 628; In re Erickson, D.C., 18 F.Supp. 439; In re Davis, D.C., 16 F.Supp. 960; In re Wylie, D.C., 16 F.Supp. 193.

We think that the orders appealed from should be affirmed.