**In re TSCHOEPE et al.**
**No. 343.**

District Court, S. D. Texas, Corpus Christi
Division.
Feb. 1, 1936.

Lloyd & Lloyd, of Alice, Tex., for debtors.

Boone, Henderson, Boone & Davis and Allen V. Davis, all of Corpus Christi, Tex., for creditor Alfred Koenig.

KENNERLY, District Judge.

This is a petition filed under Supreme Court Rule XXVII and District Court Bankruptcy Rule 7 by Alfred Koenig, a secured creditor or mortgagee of the debtors (for brevity called mortgagee) to review certain orders of a conciliation commissioner, entered by him in this cause under section 75 of the Bankruptcy Act and amendments (48 Stat. 1289, see section 203, tit. 11, U.S.C.A.) (for convenience referred to as the Frazier-Lemke Act), and particularly subsection (s) of section 6 of the amendment of August 28, 1935 (11 U.S.C.A. § 203 (s) (for convenience referred to as the amended act), in which petition for review, mortgagee, standing upon Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 866, 79 L.Ed. 1593, 97 A.L.R. 1106, attacks the constitutional validity of the Frazier-Lemke Act and such amended act.

The record discloses the following facts:

(a) April 23, 1935, debtors filed herein their petition under section 75 and amend-

ments. The case was referred to a conciliation commissioner, and an effort was made by the debtors to secure the approval by their creditors of a composition or extension proposal. They failed.

(b) October 7, 1935, debtors filed their petition herein, setting forth such failure, and praying to be adjudged bankrupts under the provisions of such amended act. Order of Adjudication was made accordingly, and the case continued in charge of the same commissioner.

(c) Debtors own 400 acres of land in Nueces county, in this division and district, against which there is a first lien (mortgage lien) in favor of the Federal Land Bank of Houston to secure debtors' indebtedness to the bank, amounting to approximately $10,000, and against which there is also a second lien (vendor's lien) in favor of mortgagee (Alfred Koenig) to secure an indebtedness of debtors to mortgagee, past due and unpaid, amounting to approximately $8,000, and against which there are tax liens for unpaid and past-due taxes for the years 1931, 1932, 1933, and 1934, amounting to approximately $800, besides taxes for the year 1935, amounting to approximately $137. The indebtedness and liens in favor of the Land Bank and mortgagee (Koenig) were in existence long prior to June 28, 1934. 200 acres of the 400 acres is the homestead of the debtors, and exempt to them under the Constitution and other laws of Texas. Approximately 250 acres of the 400 acres is in a state of cultivation or may be cultivated. The improvements on the land, consisting of a dwelling house or houses, fences, etc., are of the approximate value of $2,500. The house or houses are insured. The land is suitable principally for the raising of cotton, but debtors were only allowed by the government to raise 86 acres of cotton during 1935.

(d) And in addition to the 400 acres of land, debtors own certain personal property, some of which is, and some of which is not, exempt under the laws of Texas.

(e) There is evidence from which it is found that the present liens against the property are more than it can reasonably be expected any one would lend thereon, and while the testimony of the debtor Henry Tschoepe before the commissioner indicates that he has the sincere hope that he will be able to earn enough money on the property to pay annual interest on the liens until he can make a sale of the prop-

erty, such hope is based upon so many contingencies in the way of improved financial conditions, improved prices in farm products, acreage he is allowed to cultivate, good crops, etc., that it seems little, if any, more than hope. He has no money with which to now make payments to his creditors, if required to do so, and his ability to pay the rentals fixed is doubtful.

(f) Soon after filing their amended petition and schedules (October 7, 1935), debtors made application to the commissioner to have their property appraised. Appraisers were appointed, who appraised the 400 acres, together with improvements thereon, at $26,000, and the various articles of personal property at $2,650. Mortgagee objected to the appraisement, but the commissioner passed an order approving it.

(g) Debtors also made application to have fixed the rental value of the 400 acres, and the commissioner, after a hearing, fixed same at $1,157 per annum, the first year's rental to be payable one-half on or before May 23, 1936, and one-half on or before November 23, 1936. The mortgagee objected to the fixing of the rental and the amount fixed.

(h) Thereafter, the commissioner, over the objections of mortgagee, set aside to the debtors as their homestead exemption 200 acres out of the 400 acres, and other exempt personal property, and, in the order setting same aside, uses this language:

"It is therefore considered, ordered, adjudged and decreed by the undersigned authority that the above described property be and the same is hereby designated and set apart to be retained by the bankrupts aforesaid, as their own property, under the provisions of the Acts of Congress relating to bankrupts, subject to any existing and valid liens and taxes against the particular property on which such liens and taxes, if any, exist.

"It is therefore further considered, ordered, adjudged and decreed by the undersigned authority that the above described property exempted to them, under the laws of the State of Texas and under the Acts of Congress relating to bankrupts, be and the same is hereby set aside and turned over to the said Henry Tschoepe and wife, Margaret Tschoepe, the aforesaid bankrupts, as their own property, free and clear of any claims of any person or creditor whatsoever, subject, however, to any existing and valid liens and taxes against

the particular property on which such liens and taxes, if any, exist."

(i) Thereafter, the commissioner, over the objections of mortgagee, entered the following order:

"On this 20th day of December, 1935, came on to be heard the application of Henry Tschoepe and wife, Margaret Tschoepe, the aforesaid bankrupts, to be allowed to retain possession, under the supervision and control of the Court, of the property not exempt to them; and, after considering, at Corpus Christi in Nueces County, Texas, the said application, the evidence and being fully advised, the undersigned authority is of opinion and finds that due notice of said application has been given and that said application should be granted:

"It is therefore considered, ordered, adjudged and decreed by the undersigned authority that, in addition to their exemptions set aside to them, the said Henry Tschoepe and Margaret Tschoepe, aforesaid Bankrupts, be and they are hereby allowed to retain possession, under the supervision and control of the Court, all of the remainder of their property, as provided under subsection (s), section 75 of the Bankruptcy Acts, and any related amendatory acts."

(j) Seasonably, mortgagee (Alfred Koenig), as the owner of the second lien against the 400 acres of land, filed his petition to review the action of the commissioner, attacking, as stated, section 75 of the Bankruptcy Act and amendments, and particularly subsection (s) of section 6 of the August 28, 1935 amendment, as constitutionally invalid.

1. Under the law of Texas, mortgagee has, among other rights, the right to retain his lien against the property until the indebtedness thereby secured is paid, the right to realize upon his security by judicial public sale, and the right to determine when such sale shall be held, subject only to the discretion of the court. Louisville Joint Stock Land Bank v. Radford, supra. That the orders complained of wholly deprive the mortgagee for a period of 3 years of the right to determine when such sale shall be made, and the right to have such sale made, is clear. That if viewed in the light of section 75 and the Frazier-Lemke Act prior to the enactment of the amended act (August 28, 1935), such orders cannot be upheld, is equally clear, and

need not be discussed. Louisville Joint Stock Land Bank v. Radford, supra.

But it is claimed that after the decision in Louisville Joint Stock Land Bank v. Radford, Congress, by the amended act (August 28, 1935), pruned the Frazier-Lemke Act back to within constitutional bounds. The amended act is examined, therefore, to see if this was done.

2. The amended act provides for the appraisal of the debtors' property (both exempt and nonexempt), the fixing of the rental value thereof, the possession thereof by the debtors for a period of 3 years, but charged with existing mortgages, the stay of judicial proceedings, etc. It also provides that at any time during the 3-year period, upon request of any secured or unsecured creditor, there shall be a reappraisal or a revaluation of the property, and that during such period debtors may pay the appraised value of the property, and take it freed from liens. There is also the following proviso (italics mine): "Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor: Provided, *That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction.* The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this Act [title]." 11 U.S.C.A. § 203 (s) (3).

If this proviso means that at any time within the 3-year period mortgagee may have an order for the sale of the mortgaged property, much of the difficulty respecting the amended act is removed. In re Slaughter (D.C.) 12 F.Supp. 206. But it is clear that such proviso does not have that meaning. The meaning is that mort-

374

gagee may have a sale of the mortgaged property only after the expiration of the 3-year period, or after the debtors evidence a purpose to take the property at its appraised value. In re Young (D.C.) 12 F.Supp. 30. So that the inclusion of this proviso in the amended act does not serve to free it from the objections pointed out in Louisville Joint Stock Land Bank v. Radford.

■ 3. But it was said by Radford in Louisville Joint Stock Land Bank v. Radford (under the Frazier-Lemke Act), and it is said here by debtors (under the amended act), that the mortgagee is not injured by this denial for a period of 3 years of the possession and the right to foreclose his lien, since he receives the rentals. This contention is so clearly disposed of in Louisville Joint Stock Land Bank v. Radford that a quotation therefrom is not amiss:

"Equally unfounded is the contention that the mortgagee is not injured by the denial of possession for the five years, since it receives the rental value of the property. It is argued that experience has proved that five years is not unreasonably long, since a longer period is commonly required to complete a voluntary contract for the sale and purchase of a farm; or to close a bankruptcy estate; or to close a railroad receivership. And it is asserted that Radford is, in effect, acting as receiver for the bankruptcy court. Radford's argument ignores the fact that in ordinary bankruptcy proceedings and in equity receiverships, the court may in its discretion order an immediate sale and closing of the estate; and it ignores, also, the fundamental difference in purpose between the delay permitted in those proceedings and that prescribed by Congress. When a court of equity allows a receivership to continue, it does so to prevent a sacrifice of the creditor's interest. Under the act, the purpose of the delay in making a sale and of the prolonged possession accorded the mortgagor is to promote his interests at the expense of the mortgagee.

"Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, upon which Radford relies, lends no support to his contention. There the statute left the period of the extension of the right of redemption to be determined by the court within the maximum limit of two years. Even after the period had been decided upon, it could, as was pointed out, 'be reduced by the order of the court under the statute, in case of a change in circumstances. * * *' (290 U.S. 398, at page 447, 54 S.Ct. 231, 243, 78 L.Ed. 413, 88 A.L.R. 1481); and at the close of the period, the mortgagee was free to apply the mortgaged property to the satisfaction of the mortgage debt. Here, the option and the possession would continue although the emergency which is relied upon as justifying the act ended before November 30, 1939."

In the amended act (but not in the Frazier-Lemke Act), a plan for finding and fixing the amount of the rental is provided. But this is of no benefit to the mortgagee. There is nothing to indicate an increase of rentals over the rentals under the Frazier-Lemke Act. Under the Frazier-Lemke Act, it is apparently contemplated that the mortgagee will receive the entire rental. Under the amended act, a portion, and apparently in this case the major portion,[1] of the rental is to be used for the payment of the taxes and for the upkeep of the property. While the mortgagee would doubtless be aided by the payment of the taxes and by the upkeep of the property upon which he has a lien, he is no better off than under the Frazier-Lemke Act, because funds for payment of taxes and upkeep come out of the rental. That this change of the manner of arriving at the amount of rentals, and the application of the rentals, does not serve to bring the act within constitutional bounds need not be further discussed.

■ 4. Nor does the fact that the time that the debtors are given possession of the mortgaged property, and the mortgagee is held off and prevented from foreclosing, is reduced from 5 years to 3 years by the amended act avail the debtors. The simple change from a 5-year to a 3-year period will not render valid legislation which is constitutionally invalid.

■ 5. It is provided in the amended act (11 U.S.C.A. § 203 (s) (2) that the court may, in addition to the rental, "require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this Act.

---

[1] The taxes already due and owing alone amount to more than $900, and the first year's rental is only $1,157.

[title] and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation."

It will be observed that the amount of such payments and time of making them are to be measured and fixed by whether they are consistent with the protection of the rights of creditors, the debtor's ability to pay, and with the view to the debtor's financial rehabilitation. The right of the creditor (mortgagee), who is here complaining, is to be paid in accordance with the debtors' contract to pay, and in case of default, to foreclose his lien and be paid out of the proceeds of the sale of the mortgaged property. The ability of the debtors to pay is nil, and the chances for their financial rehabilitation is remote. The commissioner apparently did not undertake to supplement the rental by requiring the debtors to pay mortgagee, because an order to the debtors to pay any sum in addition to the rental would be an idle gesture. Whatever may be said in cases where the debtor has the ability to pay and is required to do so, it must be said that in this case the quoted provision is of no aid in freeing the amended act from constitutional invalidity.

6. It is also provided in the amended act (11 U.S.C.A. § 203 (s) (6) that: "This Act [title] is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate."

Whether this provision is void because an effort upon the part of Congress to confer legislative powers upon the courts, Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L. Ed. 1570, 97 A.L.R. 947, or because under it the operations of the amended act would not be uniform throughout the nation (In re Slaughter, supra, and cases there cited), need not be decided. The provision is on its face so vague and indefinite as to what is meant by "emergency measure," or if not, then as to what standard or test is to be applied in determining when the emergency "ceases," that it must be held unenforceable. Certainly it is not effective to free the amended act of the objec-

tions pointed out in Louisville Joint Stock Land Bank v. Radford, supra.

The conclusion is that, under the rule laid down in Louisville Joint Stock Land Bank v. Radford, supra, subsection (s) of section 6 (other than subdivisions 4 and 5) of the Act of August 28, 1935, is contrary to the Fifth Amendment, and the orders entered by the commissioner based thereon must be reversed, and the case sent back to him for further but not inconsistent proceedings.

Let an order so directing be prepared and presented.