**In re ROLLINS et ux.**

No. 33520.

District Court, S. D. California, Central Division.

June 6, 1939.

Mark Watterson, of San Bernardino, Cal., for debtors.

Thorpe & Bridges, of Los Angeles, Cal., for Security-First Nat. Bank of Los Angeles.

JAMES, District Judge.

George W. Rollins and Hilma E. Rollins, husband and wife, on January 28, 1939, filed their petition under Section 75, sub. s of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s, stating their business to be growers of oranges. Their schedules set forth that their total indebtedness amounted to the sum of $42,335, $41,200 of which was secured. Real estate owned was given a value of $35,000, while various items of personal property brought the total scheduled up to the amount of $104,470. Exemption claim was for the sum of $37,285. Of the secured indebtedness $37,600 was owing to Security-First National Bank of Los Angeles (trust deed), and $1,800 under a crop mortgage in favor of Security-First National Bank of Redlands, covering "20 acres of oranges." It may be noted here that the trust deed encumbrance is for an amount greater than the listed value of the real estate.

On August 24, 1938, in consideration of an advance of $1,760 to them to be used in carrying on the ranch work on the mortgaged property, the debtors executed a chattel mortgage to the Security-First National Bank of Los Angeles, its principal secured creditor, the mortgage to cover particularly the citrus crop then growing, as well as all crops thereafter grown, until the $1,760 had been paid. On January 6, 1939, the debtors executed an assignment to the bank covering the proceeds to

be derived from the sale of the crop (future crops as well, if deficiency). This assignment recited that the debtors had contracted to deliver the crop to Redlands Cooperative Fruit Association. The assignment contained directions to said Redlands Association to pay the crop proceeds to the Bank. This assignment was made, as stated, to protect the Bank on its crop mortgage. The assignment was accepted by the Redlands Association.

It was after the dates of the crop mortgage and the assignment that the debtors brought their case under the provisions of Section 75, sub. s and within the jurisdiction of the court as such. The Conciliation Commissioner, at the request of the debtors, gave notice to the Redlands Association to cease harvesting the crop and to pay over the returns received to him. The Virginia Groves, Inc., was employed to harvest and market the crop, and proceeded with the work. It was engaged in so doing when the Bank brought this proceeding requesting that an order be made requiring the Commissioner to permit the Redlands Association to proceed, and that the latter account to the Bank for the proceeds.

Due service of the order was made on the Commissioner and other parties interested. The Commissioner produced his records and testified. The Redlands Association filed an answer. It alleged that the debtors were members of its Association and that as to its members it has lien rights for charges for picking and selling crops, and that the debtors are indebted to it. It appears from the Commissioner's testimony that he received thus far $639 as returns on sales of the debtors' crop of oranges, which he retains; except for $136.50 which he paid to the County Tax Collector to cover taxes due.

 I am of the opinion that it was within the sound discretion of the Commissioner to order sale of the crop to be made through Virginia Groves, Inc. If Redlands Association has proper contract claim for any amount, secured or otherwise, it should be presented and handled as the facts warrant. The proceeds from the crop as harvested and marketed, and to be harvested and marketed, are clearly tied under the crop mortgage given the Security-First National Bank, and should be paid over or *earmarked* in its favor. If the payment of the tax amount of $136.50 out of the returns is shown to be in protection of the real property mortgage held by the bank, that payment may be approved. But unsecured creditors, nor the debtors, may not have part of a secured claimant's property taken away, to the loss of the latter.

The picture presented by the schedules of the debtors is not encouraging. With the value of the ranch, as set by the debtors themselves in their schedules, less than the amount of the secured debts, with interest and other charges accumulating, it is difficult to see how, unless new financing can be worked out, a satisfactory outcome can be reached.

The Commissioner should expedite the proceedings and will be governed by the conclusions expressed.