## In re MAHAFFEY.

### No. 256.

Circuit Court of Appeals, Second Circuit.
June 10, 1942.

George A. King, of Corning, N. Y., for bankrupt.

Argetsinger & Valent, of Watkins Glen, N. Y., for respondent.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The issue presented by this appeal is whether a court of bankruptcy may, under § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, permit a farmer-bankrupt's farm to be foreclosed in State proceedings because of the bankrupt's failure to make repairs to the premises and payments on current and back taxes, as directed by the bankruptcy court. The bankrupt, Mrs. Florence C. Mahaffey, filed a debtor's petition under § 75 on January 19, 1940. At that time she owned a farm in the Town of Dix, Schuyler County, New York, and a parcel of untilled farm and timberland in the Town of Orange, Schuyler County. A mortgage was held by David E. and Stella E. Van Order on this property, on which $9,809.81 principal and $3,788.80 interest were owing. The mortgagees had begun a foreclosure proceeding in the County Court of Schuyler County which, pursuant to § 75 of the Bankruptcy Act, was stayed by the bankruptcy court when Mrs. Mahaffey's petition was filed. Upon her failure to effect a composition, Mrs. Mahaffey filed an amended petition under § 75, sub. s, and was thereafter adjudged a bankrupt. The Conciliation Commissioner ordered her to pay an annual rental of $300, in two installments, and to make payments, to apply on her debts, of $200 on September 1, 1940, $300 on September 1, 1941, and $500 on September 1, 1942. On the mortgagees' motion, the District Judge increased the rental to $400 a year, ordered the bankrupt to assign certain choses in action and to procure insurance in the amount of $3,500 on the Town of Dix property, and granted to the mortgagees the right to sell the Town of Orange land. These orders had been complied with by May 5, 1941.

On July 3, 1941, the District Judge ordered the bankrupt to make repairs to her barns at a cost of not less than $50.00, to pay $150.00 annually to apply against back taxes, and to pay the Commissioner enough to enable him, with the funds at hand, to pay the current taxes on the Town of Dix property. The bankrupt attempted on August 2, to appeal from this order, but, through an oversight, neglected to pay the filing fee. On August 25, the District Judge entered an order vacating his stay of the State foreclosure proceeding, and giving the mortgagees permission to continue that proceeding. The bankrupt filed a proper and timely notice of appeal from this order.

By § 75 sub. o, 11 U.S.C.A. § 1203, sub. o, foreclosure proceedings may not be instituted or maintained at any time "prior to the confirmation or other disposition of the composition or extension proposal" except with the bankruptcy court's permission and following a hearing and report by the Conciliation Commissioner. We need not decide what criteria should govern the granting of such permission by the court, since the respondents cannot rest on this provision. There was no reference of the request to the Conciliation Commissioner, but, more important, we think that the amendment of the petition pursuant to subsection (3) constituted such a "disposition" of any composition or extension proposal as to render subsection o no longer applicable to the proceedings. Following a final disposition of any composition or extension proposal, the court's power to stay or to vacate a stay of state proceedings must be sought elsewhere than in subsection o.

At this point, subsection s(2) of the Act comes into play; it provides that the court "shall stay" all such non-bankruptcy proceedings for a period of three years, during which period the debtor shall be allowed to remain in possession upon paying a reasonable rental and such payments on his principal obligations as the court shall order pursuant to the Act. No provision is made in the Act for a vacation of the stay, and it seems reasonably clear that, during the three-year period, the bankruptcy court may not abdicate its statutory overseership of the bankrupt's property (cf. Kalb v. Feuerstein, 308 U.S. 433, 440–443, 60 S.Ct. 343, 84 L.Ed. 370), though, of course, in a proper case the bankruptcy petition may be dismissed and the creditors allowed to pursue their non-bankruptcy remedies. Federal Land Bank v. Hansen, 2 Cir., 113 F.2d 82, 84.

But short of this, the court must either leave the bankrupt in possession or order a sale of the property pursuant to subsection s(3). Nor is its power to order a sale[1] completely unconfined; al-

---

[1] We assume for the purpose of argument that the order of August 25 was equivalent to an order directing a sale of the property, but we leave open the

though the Act is not entirely free of ambiguity, we think there can be no sale until the expiration of the three-year period, unless the bankrupt has failed to comply with an order of the court or is unable to refinance himself during that period. This has been the view of several district courts and one other circuit court. In re McIntyre, D.C., 23 F.Supp. 342, affirmed without opinion, 3 Cir., 106 F.2d 1004; In re Diller, D.C. S.D.Cal. 13 F.Supp. 249; In re Tschoepe, D.C. S.D.Tex., 13 F.Supp. 371, 373–374; In re Schoenleber, D.C. D. Neb., 13 F.Supp. 375, 379; In re Young, D.C. S.D.Ill., 12 F.Supp. 30, 32. It is especially interesting that the four cases last cited regarded the three-year prohibition on liquidation as unconstitutional. Since they presumably resolved every doubt in favor of the Act's constitutionality,[2] they could not have found in the Act any possible basis for allowing a sale, at the mortgagee's option, during the three-year period. In Wright v. Vinton Branch, 300 U.S. 440, 461, 464, 57 S.Ct. 556, 561, 81 L.Ed. 736, 112 A.L.R. 1455, it was held that the three-year stay is "not an absolute one" and that the Act must be construed "as giving the courts broad power to curtail the stay for the protection of the mortgagee," but it is clear from a reading of this part of the opinion that the court was referring to such limitations on the debtor's right of possession as the requirements that he pay rental and, if ordered, installments of principal, that he be evicted if there is no hope of his rehabilitation, and that the stay be shortened if the emergency ceases in the locality.[3] The order of August 25 must, therefore, be predicated upon the bankrupt's failure to obey the order of July 3, and if the latter order was improper, the order of August 25 must fall with it.

We turn to the validity of the order of July 3.[4] By that order, the bankrupt was directed to make all necessary repairs on her barn doors and buildings in an amount not less than $50.00, to pay part of the current town and county taxes, and to pay $150.00 annually against the tax arrears on the property. These amounts were to be paid in addition to all amounts previously directed, and set out above. These earlier orders were all obeyed by the bankrupt, although, because of a misunderstanding, she was a few days late in making one payment.

In construing subsection s, we start with the premise that so long as the secured creditor's constitutional claim is preserved, he "certainly is in no position to insist that doubts or ambiguities in the Act be resolved in its favor and against the debtor. Rather, the Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress * * * lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act." Wright v. Union Central Ins. Co., supra, 311 U.S. 278, 279, 61 S.Ct. 200, 85 L.Ed. 184. It is plain that the benefits of the Act would be "frittered away" if the bankrupt could be swamped with court orders directing him to make payments without regard to his ability to pay. The Act contains no warrant for hanging a judicial millstone around the bankrupt's neck, and it would be ironic if a relief measure of this type were so construed. Yet that could easily be the precise effect of the order here complained of. First the debtor is required to pay the usual rental for the possession of the property, then she is directed to make payments on

question of whether the power granted in subsection s to order a sale would permit a state foreclosure proceeding.

[2] United States v. Jin Fuey Moy, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061.

[3] Some of the congressional debate might suggest that the court had an unqualified discretion to order sale at any time (see the Wright case, supra, at page 464 note 9 of 300 U.S., 57 S.Ct. 556, 81 L. Ed. 736, 112 A.L.R. 1455), but this "unqualified right to a public sale" is given "as the alternative to a transfer of the property to the debtor at the re-appraised value" (300 U.S. 459 note 9, 57 S.Ct. 560, 81 L.Ed. 736, 112 A.L.R. 1455; italics added). Cf. 74th Cong., 1st sess.,

S.Rept.N. 985, p. 4. It was later held by the Supreme Court that the power to order a public sale does not come into play unless the debtor fails to redeem at the reappraised value. Wright v. Union Central Ins. Co., 311 U.S. 273, 281, 61 S.Ct. 196, 85 L.Ed. 184.

[4] It appears that, although respondent's attorney sent a timely notice of appeal from this order to the clerk, he failed to include the filing fee and, through an oversight in the clerk's office, did not learn of his error until the prescribed 30-day period for filing notice of appeal had expired. Since, however, the validity of this order is necessarily raised, any defect in the appeal taken from it is immaterial.

her debts, then she is required to defray such current charges as taxes, insurance and repairs, and finally she is directed to amortize the tax arrearages. Such a result is not in accord with the purpose of the Act, and it does violence to the letter. The conditions under which the debtor may remain in possession are set out in subsection s(2). He must pay a reasonable rental, "the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity." This rental must be paid into court, and must be applied on the payment of taxes and upkeep of the property; only the "remainder" is to be paid to the creditors. In addition, the court may require payments on the principal, but they must not be "inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation." While the court may, of course, make such additional orders as the situation requires (Borchard v. California Bank, 310 U.S. 311, 317, 60 S.Ct. 957, 84 L.Ed. 1222), there is no warrant in the Act for requiring of the bankrupt any greater payments. The Act clearly contemplates that the rental must be the going rate in the locality, and that payments on principal must not exceed the bankrupt's ability to pay. The effect of thus limiting the rental and the payments on principal would be utterly dissipated if the court could, in addition, require the debtor to pay taxes, upkeep and arrearages. The Act contemplates quite the opposite; rental must be applied to taxes and upkeep. Nor should the possibility of requiring payments on principal be twisted to evade the restriction on increasing the rental.

 We hold, therefore, that the court's power to direct the making of payments by the bankrupt is limited to rental and proper installments of principal. So long as the rental is sufficient to cover current taxes and upkeep, there is no possibility of an impairment of the creditors' security, but even if the rental is insufficient, the creditors must appeal to the legislature and not to the courts. For the Act might easily have required the bankrupt to meet all current charges; instead, it required him to pay the "usual customary rental." We cannot take judicial notice of any alleged economic law that rental must be greater than taxes and upkeep; the contrary is often true. Nor do we think that impairment of the security by reason of the rental's inadequacy to cover such charges is ipso facto unconstitutional.

 In directing the bankrupt to pay for repairs to the barn doors and buildings and to meet the current tax charges (or to contribute toward them), the order of July 3 was, therefore, improper. Those expenses should have been met out of the rental. It may be argued that the effect of these directions was the same as increasing the rental or the installments required to be paid on principal, but there is no evidence that an increase in rental was justified or that these payments bore any relationship to "the debtor's ability to pay, with a view to his financial rehabilitation." Perhaps they were within the bankrupt's ability to pay, so that in amount they were no greater than what the court might properly have ordered the bankrupt to pay as installments of principal; nevertheless, we cannot assume this as a fact. The same objection applies to paragraph 4 of the order, requiring the bankrupt to pay $150.00 toward the tax arrearages, though perhaps with somewhat less force. All things considered, however, we think that provision must fall also; the whole matter is too botched for us to set it right at this late state, especially without a record of the proceedings before the court below. An additional objection to requiring the bankrupt to pay current charges above the rental in lieu of paying installments of his principal obligations is perhaps even more important. Any payments made on principal, will, of course, reduce the bankrupt's obligations pro tanto; it would probably, therefore, be a strain on the statute to require the bankrupt to make, as a substitute for payments on his principal debt, any payments which do not reduce that indebtedness, such as payments on any current charges which do not become part of the mortgage debt.

We cannot, therefore, say that the order of July 3 was only a substitute for a direction to make proper payments on principal, and, as indicated, it cannot stand on its own feet.

The orders of July 3, 1941 and of August 25, 1941 must be vacated.