**In re BORCHERT et al.**

Nos. 38519–M, 38520–M.

District Court, S. D. California,
Central Division.
Oct. 29, 1942.

Thos. L. McFadden, of Anaheim, Cal., for bankrupts.

Daniel I. Schnabel and Edmund Nelson, both of Los Angeles, Cal., for Bank of America Nat. Trust & Savings Ass'n.

Richard W. Young, M. G. Hoffmann, and Percy A. Smith, all of Berkeley, Cal., for Federal Land Bank of Berkeley.

Fred D. Johnston, of Santa Ana, Cal., for Conciliation Commissioner for Orange County.

388

McCORMICK, District Judge.

This is the review of an order of the conciliation commissioner dated December 18, 1941. The order is effectual in the estate of each bankrupt although it has been formally entered only in the matter of Ernst Borchert. It has been stipulated that the order, if confirmed, is applicable in the estate of Blanche L. Borchert, as well. It thus appears that the same questions for decision are involved in each proceeding and, accordingly, this memorandum and order relates to the estate of each bankrupt.

From the findings of fact of the conciliation commissioner and the record before us it appears that Ernst Borchert and Blanche L. Borchert, husband and wife, hereinafter called the Borcherts, were in good faith engaged in agricultural pursuits, operating the parcels of real property involved in this matter as citrus orchards. Being unable to meet their financial obligations as they matured and desiring to effect a composition or extension of time to pay their debts, the Borcherts on May 8, 1941, filed their respective petitions under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. On August 5, 1941, the debtors, unable to obtain the acceptance of a majority in number and amount of all creditors whose claims were affected by the composition or extension proposal, regularly filed a petition under subsection s of Section 75 of the Bankruptcy Act and were duly adjudged bankrupts under said subsection.

The secured indebtedness of the bankrupts to Bank of America National Trust and Savings Association, hereinafter called Bank of America, the petitioner on review herein, amounts to $96,425.13, and represents principal, interest, and advances on two promissory notes secured by a deed of trust executed by the Borcherts on August 18, 1938. A claim for such amount has been duly filed and has been allowed by the conciliation commissioner. The deed of trust constitutes a first lien upon one parcel of the bankrupts' realty and a third lien upon another parcel thereof which is also encumbered by a first trust deed in favor of Federal Land Bank of Berkeley. The notes to Bank of America are further secured by a mortgage of crops and chattels, also dated August 18, 1938, executed by the Borcherts to Bank of America and constitute a lien upon all crops grown upon all the real property covered by the above mentioned two deeds of trust, and also upon certain farming implements and machinery of the Borcherts, until such time as the indebtedness to the Bank of America is paid in full. The crop mortgage involved in this proceeding is a so-called continuing crop mortgage, a security recognized by the laws of the State of California in certain situations in which the broad emergency powers of subsection s of Section 75 of the National Bankruptcy Act are not necessarily operative.

Subsequent to the adjudication under subsection s of Section 75 and pursuant to the required procedure therein, an appraisal of the real property of the Borcherts has been duly made. No objections have been urged or filed to such appraisal.

On December 18, 1941, the commissioner, consonant to the terms of subsection s, made an order setting aside exemptions, staying proceedings, vesting possession, and fixing rental upon the occupied premises to be paid by the bankrupts. As the bankrupts had no means of raising revenue other than the farm property itself, it was provided by the terms of this order that for a period of one year the rental of the farm lands operated by the Borcherts be fixed at one-fifth of the gross income from said property, except on one parcel of such farm property (that upon which the Federal Land Bank held a first trust deed), the rental be fixed at one-tenth of the gross income. The order further provided that all expenditures for the upkeep and operation of the property and all other necessary expenditures, except delinquent and current taxes, should be paid out of the remaining gross income. For the balance of the three-year period prescribed by subsection s, the rental of the property was to be fixed by the commissioner on such terms as he might later order.

At the hearing of this review in open court the parties stipulated that Bank of America as crop mortgagee is entitled to all crop proceeds accruing prior to the date of adjudication under subsection s of Section 75. This court acquiesced in such stipulation with the reservation that under the Adair case, infra, necessary administrative expenses would be allowed in settlements of accounts.

Bank of America opposes the rental orders and contends that as it is the holder of a deed of trust constituting a lien upon

the premises and is also the holder of a continuing crop mortgage to additionally secure the payment and discharge of its lien, the order fixing rental from the proceeds of crops which may be grown upon the premises is "illegal, invalid and unconstitutional," because it amounts to a substantial impairment of the lienholder's security to such an extent that such security is completely and irrevocably lost to the creditor bank.

With this contention we are unable to agree. The primary purpose and function of the Frazier-Lemke Act is to afford temporary relief to financially embarrassed farmers whose circumstances despite present difficulties afford a reasonable expectation of ultimate financial rehabilitation. The Act itself looks toward the maintenance of the farm as a going concern and for the continuance of its operation after the filing of a petition pursuant to its provisions. To hold, therefore, that farm debtors who have no means of raising revenue other than from the farm property itself may not avail themselves of the Frazier-Lemke provisions of the Bankruptcy Act if there is a continuing crop mortgage upon the production of the farm property, would defeat the very purposes for which said Act was created.

The purview of this remedial statute has been expressed by the Supreme Court in John Hancock Mutual Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 223, 84 L.Ed. 176, in the following broad language: "The plain purpose of Section 75 was to afford relief to such debtors who found themselves in economic distress *however severe*, by giving them the chance to seek an agreement with their creditors subsections a to r, and, failing this, to ask for the other relief afforded by subsection s. [Italics supplied] * * * The scheme of the statute is designed to provide an orderly procedure so as to give whatever relief may properly be afforded to the distressed farmer-debtor, while protecting the interests of his creditors by assuring the fair application of whatever property the debtor has to the payment of their claims, the priorities and liens of secured creditors being preserved."

An indispensable requirement of the debtor's right to possession of the farm property under subsection s is the rental provision of the statute, and if availability of this financial relief measure extends only to farmers whose distress has not been so "severe" as to compel crop mortgaging, then the legislation fails to attain its objective in those situations where it is mostly needed and for which, in my opinion, it is principally intended. To so construe the terms of this remedial statute is not only contrary to its express language, but the interpretation contended for does violence to the plain purpose of Congress in enacting the emergency relief measure. Section 75 of the Bankruptcy Act expressly makes its terms and provisions available to "any farmer" regardless of the severity of his economic distress.

It is to be further noted, as the Supreme Court has said in declaring the present subsection s constitutional, that the debtor's tenure under the three-year stay is subject to the requirement that he pay "a reasonable rental semi-annually for that part of the property of which he retains possession." Wright v. Vinton Branch, etc., 300 U.S. 440 at page 461, 57 S.Ct. 556, at page 561, 81 L.Ed. 736, 112 A.L.R. 1455. This clearly indicates a status change by the farmer when subsection s is resorted to for relief. He then becomes a tenant and if unfortunately his only source of earning is the crop upon the land being administered, resort must be had to crop proceeds to make possible the operation of this remedial law.

We have earlier adverted to the situation generally prevalent in farm debtor proceedings under the Act where the sole source of funds lies in the crops, and unless the rental requirement of the statute can be made out of the crops the vitality of the whole Congressional scheme of this emergency legislation is thwarted and defeated. The crop mortgage is merely additional security to the Bank of America for the payment of the debt to it. It is merely cumulative to the trust deed lien. Bank of California v. McCoy, 23 Cal.App. 2d 192, 72 P.2d 923. It is clear that a court of bankruptcy in traditional processes may lawfully affect the interest of lienholders in many ways, and it has been held by the highest authority that in ordinary bankruptcy realization upon the lien created by the state law must yield to the requirements of bankruptcy administration. Wright v. Vinton Branch, supra; Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453. To a much greater and more effective de-

gree is it necessary to consider and administer the lien rights of creditors in the rehabilitation processes for the relief of distressed farmers under section 75, sub. s, of the Bankruptcy Act in accord with the spirit of the Congressional objectives.

It is firmly established that it is proper in proceedings under Section 75, subs. a to r, to use crop proceeds for upkeep and maintenance of the "farm" property which is encumbered primarily by a deed of trust and also by crop mortgage covering the crops upon the property. Adair v. Bank of America, etc., 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889, and it is significant in the Adair decision that the court placed its approbation upon allowances for items such at attorney's and court reporter's fees, which did not fall in the category of maintenance or upkeep and which in point of time were chargeable during the proceedings under subsection s. This, I think, illustrates the broad view that is to be taken judicially in construing the Frazier-Lemke provisions of the Bankruptcy Act and, particularly where, as here, the same entity holds the benefits of both a trust deed upon the land and the crop mortgage upon the product of the soil.

Petitioner on review further contends that because subsection s(1) of Section 75 provides: "Existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect," to permit the present order of December 18, 1941 to remain would, in effect, take away the right of the creditor to retain his lien until the indebtedness is paid in full. Here, however, petitioner did not hold an "existing" lien at the time of bankrupts' adjudication under subsection s of the Act (except to the extent stipulated to at the hearing). The holder solely of a continuing crop mortgage has no interest or lien upon the land. The lien of such mortgage attaches only when the crop comes into actual existence. First National Bank of Oakdale v. Brashear, 200 Cal. 389, 253 P. 143; Pacific Coast Joint Stock Land Bank v. Jones, 14 Cal.2d 8, 92 P.2d 390, 123 A.L.R. 695. The intention of Congress is to be sought for primarily in the language used, and if the language is clear and unambiguous, it must be accepted without modification, without resort to construction or conjecture. Thompson v. United States, 246 U.S. 547, 38 S.Ct. 349, 62 L.Ed. 876; Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62; Wright v. Union Central, etc., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184; In re Mahaffey, 2 Cir., 129 F.2d 292. There is certainly no impairment of the lien which does not exist on the date that the adjudication is made, nor is any lien impaired on crops which are to be produced and come into being in the future; and when the crop does come into existence after adjudication, then the bankrupt, being in effect a crop share tenant (such being the legal effect of the divestiture operative by the farmer when he invoked s after failure of his proceedings under a to r, is merely the owner of four-fifths and nine-tenths of the crop in respective areas, and the landlord's share of the crop is available for the payment of rental.

Bank of America relies upon In re Los Angeles Mfg. Co., 7 F.Supp. 567, decided on June 27, 1933, by this court, and affirmed by our Court of Appeals on May 31, 1934, in 9 Cir., 71 F.2d 246. We think an entirely different situation exists where the proceedings are under the rehabilitation measure of Section 75, than if the matter proceeds in general bankruptcy. The latter is solely a liquidating procedure. No trustee is appointed in subsection s proceedings until the end of the three-year stay period, or until the bankrupt under s defaults in some particular regarding his requirements under the subsection.

Petitioner on review cites a decision in this court by our lamented associate, the late Judge James, in Matter of George W. Rollins et ux., D.C., 46 F.Supp. 977, as decisive of the invalidity of the rental order under attack in this proceeding. An examination of the record in the cited case reveals a situation clearly distinguishable from that before us on this review, and the order of Judge James in the Rollins matter expressly reflects the conclusion by Judge James that his ruling applied only to proceedings where the crop mortgagee holds no other security for the indebtedness to it.

In the instant proceedings, as has been previously stated, the Bank of America holds both trust deed to the real property and also the crop mortgage upon the crops grown thereon as securities for the debtor's obligations to it. In the amended signed order entered in the Rollins matter June 21, 1939, Judge James stated: "I am of the opinion and I conclude that, where a

holder of a crop mortgage does not have a lien upon the real property upon which the crop is grown, so long as the whole or any part of the indebtedness secured by the crop mortgage remains unpaid, the conciliation commissioner cannot use either the whole or any part of the proceeds of the crop covered by such crop mortgage, but they must be paid to such crop mortgagee creditor."

While the order in the Rollins matter, regardless of its scope, in no way controls the court in the matter before us, we think that Judge James expressly limited the scope of the Rollins' ruling to a situation fundamentally different than that found in this review.

We conclude by holding that the conciliation commissioner's findings of fact, conclusions of law and order dated December 18, 1941, are adopted by this court and confirmed. Exceptions allowed petitioner on review.