## KLEVMOEN v. FARM CREDIT ADMINISTRATION.

No. 12545.

Circuit Court of Appeals, Eighth Circuit.

Nov. 9, 1943.

William Lemke, of Fargo, N. D. (Harry A. Weaver, of Fargo, N. D., and Elmer McClain, of Lima, Ohio, on the brief), for appellant.

Joseph P. Stevens, Asst. U. S. Atty., of Fargo, N. D. (P. W. Lanier, U. S. Atty., of Fargo, N. D., on the brief), for appellee.

Before SANBORN and RIDDICK, Circuit Judges, and DELEHANT, District Judge.

DELEHANT, District Judge.

The single question presented by this appeal is whether, in a proceeding pending in the United States District Court for the District of North Dakota under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, involving real estate located only in North Dakota where composition or extension has not been effected under subsections a to r, inclusive, and resort has been had to the procedure provided under subsection s, unencumbered, planted but unmatured crops must be separately identified and scheduled as a chattel asset or should merely be included with, and constitute a part of, the land upon which they are growing.

The record brought to this court discloses that the crops in question were planted by the appellant in the spring of 1942, and were "all in by the middle of May on the bankrupt's land". He instituted his farm debtor proceeding on May 19, 1942, and with his petition filed schedules including among his assets his land, part of which only was his homestead, but not separately including the crops then very recently planted thereon. At the first meeting of creditors after the filing of the appellant's amended petition under subsection s the appellee, holding a claim unsecured, so far as any 1942 crop is concerned, under several notes given between February 20, 1931, and April 13, 1935, orally moved the local conciliation commissioner to require the appellant to schedule the growing crops for 1942 separately from the scheduled real estate. The conciliation commissioner overruled the motion and, upon a petition for review, the District Judge reversed the commissioner's order and granted the appellee's motion that the crops be scheduled and included as assets, separately and apart from the land. The bankrupt, appellant, appeals from that order of the judge.

It is asserted by the appellant and acknowledged by the appellee that, under the law of North Dakota, those annual crops which are within the definition of fructus industriales are, during the period of their immaturity, and while they continue to derive sustenance from the soil, a part of the soil; that as such, their title is ordinarily in the owner of the land by virtue of such ownership, and passes upon his deed of the land to a purchaser or, upon involuntary alienation, to the grantee of the land at judicial sale. Tanous v. Tracy, 55 N.D. 100, 212 N.W. 521, 522; Hendricks v. Stewart, 53 N.D. 513, 206 N.W. 790, 791, 792; Merchants' State Bank v. Sawyer Farmers' Coop. Ass'n, 47 N.D. 375, 182 N.W. 263, 14 A.L.R. 1353; Wenzel v. Taylor, 47 N.D. 55, 180 N.W. 807.

The appellee directs our attention to the further unquestioned rule that the ownership of growing crops as an incident of the ownership of the soil in which they are growing is not invariable; that such crops may belong, in the first instance, to one not the owner of the land; and that even in the ownership of the proprietor of the land, they are susceptible of separate sale or encumbrance by him and subject to levy under judicial process. Such possibilities certainly exist; and when they transpire, ordinarily result in the constructive severance from the soil of the growing crop and its treatment for the purposes of the particular transaction under scrutiny as chattel property, distinct from the soil. It will be noted that no such severance is disclosed in the record before us. No occasion arises, therefore, for determining whether a purely supposititious imposition by the appellant upon the growing crops of a valid lien before the institution of his farm debtor proceeding would have required the separate scheduling of the crops and their administration distinct from the land.

The appellee argues in support of the District Court's ruling, that if the farm debtor had sought relief in an ordinary bankruptcy proceeding he would have been required separately to schedule his unmatured crops, title to which would have passed to the trustee in bankruptcy for administration and accounting for the bene-

fit of his general creditors. Granting, without deciding, that such an obligation exists in general bankruptcy proceedings, it does not follow that it must also be observed in cases arising under 11 U.S.C.A. § 203. A clearly valid distinction in purpose and administration is to be drawn between the two types of relief. In general bankruptcy, the objective is to allow the debtor to make on the filing of his petition for adjudication a complete financial departure from the past. As of that instant, his debts are determined, and subject only to his rights in his exempt property, he surrenders to the trustee for his creditors all of his property, and goes forth discharged of his debts but also divested of his property. On the contrary, the objective of the current farm debtor proceeding is a continuity with the past, a rehabilitation of the debtor in the possession of his property, which he retains under the court's directions, precisely so that he may utilize it in achieving that rehabilitation. It has been made clear that 11 U.S. C.A. § 203 itself provides a comprehensive system of administration of the affairs of distressed farm debtors, looking to their rehabilitation within their own calling. John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L. Ed. 176; Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222; Wright v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184; In re Borchert, D.C.Cal., 47 F.Supp. 387, 389, 390. The liberality towards which the Supreme Court has admonished the lower courts in the administration of the law, for the achievement of its objective (see the foregoing citations) is recognized and followed by this court. Buss v. Prudential Insurance Company of America, 8 Cir., 126 F.2d 960, 968.

Several considerations, but principally two, prompt us to the conclusion that the order of the District Judge in this instance is erroneous. In the first place, it is not in harmony with the declared and manifest design of the applicable legislation for the rehabilitation of a farm debtor. To that end it is provided that he shall remain in possession of his property under the supervision and control of the court, section 203 subsection s(1) and (2), provided he pays a reasonable rental for it, section 203, sub. s(2). Paying that rental, in respect, now, of real estate, he is entitled, in our opinion, to so much of the products of the soil as remains above the rental, first to defray the expense of its planting, development and marketing, and secondly, in theory at least, as an instrument of redemption. Otherwise the possibility of redemption could exist alone in a fortuitous increase in the value of his land. Adair v. Bank of America National Trust & Savings Ass'n, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889; Wright v. Vinton Branch, 300 U.S. 440, 57 S.Ct. 556, 81 L. Ed. 736, 112 A.L.R. 1455; In re Borchert, D.C.Cal., 47 F.Supp. 387. And, in the pending case, the proceedings had progressed before the local conciliation commissioner at the time of the inception of this controversy, to the point where a rental order was available, requiring the debtor to pay rental to the court out of the particular crops here involved. In the second place, at the very threshold of recourse to 11 U.S.C.A. § 203 sub. s, occurs the appraisal of the debtor's property; and upon that appraisal arises an immediately effective redemption right in favor of the debtor as to his real estate. He may, promptly upon appraisal and without waiting for the lapse of any substantial part of the three-year stay period, Section 203 sub. s(3), pay into court the amount of the appraisal; whereupon the court must, by an order, turn over to him "full possession and title of said property, free and clear of encumbrances". And it would seem to be beyond question that the real property thus turned over to him should not be stripped of its growing and immature annual crops placed on it by his industry, but should rather be in its current condition including all things of value that would normally attach to it, upon the transfer of its title. And we see no reason why, in North Dakota, where even crops planted during a pending redemption period after judicial sale, whether by the owner of the equity of redemption or by his tenant, pass wholly to the grantee in a sheriff's deed after failure to redeem (see citations supra), the crops should not remain a part of the land in the event of redemption in a case of the type before us. And if that be allowed, they should not be separately scheduled and appraised, but should be considered in the evaluation of the land.

Consequently, for error in requiring that the immature growing crops be separately scheduled, the judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent herewith.