## REICHERT v. FEDERAL LAND BANK OF ST. PAUL.

### No. 12633.

Circuit Court of Appeals, Eighth Circuit.

Jan. 5, 1944.

Elmer McClain, of Lima, Ohio (F. E. McCurdy, of Bismarck, N. D., on the brief), for appellant.

Robert J. Barry, of St. Paul, Minn. (John F. Lord and A. L. Quilling, both of St. Paul, Minn., on the brief), for appellee.

Before THOMAS and JOHNSEN, Circuit Judges, and MOORE, District Judge.

THOMAS, Circuit Judge.

This is an appeal by a farmer-debtor from an order entered in a proceeding under § 75 of the Bankruptcy Act, 11 U.S. C.A. § 203.

The appellant filed his petition under § 75 on March 5, 1941, and was adjudged bankrupt under § 75, sub. s, on May 31, 1941. Thereafter his property was duly appraised, and on August 25, 1941, an order was entered by the Conciliation Commissioner staying proceedings against the bankrupt or his property for a period of three years, allowing the debtor to retain possession of his farm under the supervision and control of the court, and fixing rentals for 1941 and annually thereafter for the period of the stay at one-fourth of all grain, one-fourth of all payments under the AAA program, and $200 for the use of the buildings and pastures.

The land comprised two sections subject to two first mortgages to the appellee for which claims were allowed in the aggregate amount of $14,707.12. The appellee also held as additional security for unpaid taxes and delinquencies a $3,400 mortgage covering 25% of all crops grown on the same land during the year 1941.

The value of the land was fixed, upon review by the court, at $10,400.

On October 11, 1941, the debtor reported and deposited with the Conciliation Commissioner $1,456.27, which accounted for the 1941 crop rental pursuant to the order of August 25, 1941. The debtor did not

pay nor account for one-fourth of the payments under the AAA program nor the $200 cash rental provided for in said rental order. No distribution of the amount of rentals deposited was made upon taxes, upkeep or to the creditors pursuant to the provisions of § 75, sub. s(2).

For the purpose of redeeming the land the debtor thereafter deposited with the Conciliation Commissioner $8,943.73, which with the $1,456.27 crop rental previously deposited was intended to make up the $10,-400 redemption value fixed by the court. This payment included the proceeds which the debtor had received from the 1941 crop, none of which had been applied by him to payment of appellee's $3,400 mortgage on the 1941 crop.

On September 23, 1942, the Conciliation Commissioner entered an order turning over the real estate to the debtor free and clear of encumbrances and distributing the $10,400 by applying $1,605.83 to the payment of taxes and the balance of $8,794.17 to the mortgagee.

Upon petition to review this order the district court held:

1. That pursuant to § 75, sub. s(2), rentals paid during the stay period must be distributed to payment of taxes and upkeep and the balance to the creditors upon their claims as their interest may appear; that "claims" of creditors as used in § 75, sub. s(2), means "the total debts" held by the creditors and allowed in the proceeding and not the appraised value of the security fixed for redemption purposes.

2. That the debtor should be required to account for and deposit with the Conciliation Commissioner the $200 cash rental and one-fourth of the benefit payments under the AAA program for 1941, and that the Commissioner should then distribute all of the 1941 rentals so received, including the $1,456.27 crop rental, to the payment of taxes and upkeep and the remainder to the appellee as the holder of the first lien.

3. That the Conciliation Commissioner, acting as referee, should then, upon due notice and hearing, determine the value of the security for the crop mortgage held by appellee on 25% of the 1941 crops grown on the land, and require payment of the value so found upon said mortgage as a condition precedent to the use of any part of the proceeds of said crop for redemption purposes.

4. That upon thus determining the part of the $10,400 on deposit properly applicable to the redemption of the real estate at the value fixed by the court an order should be entered allowing the debtor a reasonable time in which to deposit such additional funds as may be necessary to make up the $10,400 fixed value before entering an order turning over the land to the debtor free and clear of encumbrances; and that the amount so deposited should then be distributed to the secured creditors as their interest may appear.

An order was entered accordingly. It is from this order that the debtor appeals.

The debtor contends that the court erred in two particulars: (1) In holding, in a case in which the debtor redeems the mortgaged land, that the rentals remaining after payment of taxes and upkeep should be distributed to the creditors as their interests may appear—in this case to the appellee as holder of the first lien; and (2) in holding that the crop mortgage, given before adjudication of bankruptcy, was a lien on the debtor's share of the crop remaining after payment of rentals fixed by the court, 25% of the value of which crop must be paid to the mortgagee in addition to the value of the farm as fixed by the court.

The first contention relates to the proper distribution of the rentals, in excess of taxes and upkeep, required to be paid for possession of the mortgaged land during the three-year period under § 75, sub. s(2), in a case where the debtor redeems pursuant to the provisions of § 75, sub. s(3).

Section 75, sub. s(2), provides that: "Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, *and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims*, as their interests may appear." This subsection further provides that "The court, in its discretion, * * * may, in addition to the rental, *require payments on the principal due and owing by the debtor* to the secured and unsecured creditors, as their interests may appear", for the protection of the rights of the creditors and with a view to the debtor's financial rehabilitation. (Italics supplied).

Subsection s(3) provides that "At the end of three years, or prior thereto", the debtor may redeem the farm by paying into court the appraised value, or the value

fixed by the court, "less payments made on the principal."

In the instant case redemption was attempted before the first year of the three-year period had expired, and the Conciliation Commissioner's order turning over the property to the debtor was made about a month after the end of the year. At that time the first year's rental was not all paid and none of the rental had been distributed.

■ The retention of the possession of the property is conditioned by the statute upon the debtor's depositing in court the reasonable rental provided for. No complaint is made of the amount of the rental fixed in the order of August 25, 1941. There can be no doubt that that part of the order requiring the payment of the rental into court is correct and in accordance with the provisions of the statute. Neither can there be any doubt about how the court should use the rental after it is paid in. First the taxes and upkeep of the property must be paid. The Commissioner proceeded without paying the taxes out of the rental. In this he erred, and the court was right in requiring this to be done. The remainder of the rental must then be "distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear." There appear to be no unsecured creditors in the present instance. The appellee's claim allowed on its first mortgages amounted to $14,707.12. The value of the land fixed by the court was only $10,400. The court required the remainder of the rental to be applied upon the "claim" and not upon the $10,400. Since this part of the court's order is pursuant to the express language of the statute and is in accord with the holding of this court in Wilson v. Dewey, 8 Cir., 133 F.2d 962, 965, which is controlling, it is unnecessary to discuss the arguments of counsel for appellant upon this branch of the case.

The second question presented by the appeal is more difficult than the first, in that the identical point has not heretofore been determined. It will be noted that the district court holding that appellee's crop mortgage was a lien upon the debtor's share of the 1941 crop grown upon the mortgaged farm, ordered the Conciliation Commissioner, acting as referee, upon notice and hearing, to determine the value of the security for the crop mortgage and to require payment of the value of the security for the lien, that is, payment of 25% of the value of the crop in satisfaction of the mortgage lien.

The appellant's contention, as we understand his argument, is that the rights of the appellee under its crop mortgage are included in the value of the farm fixed by the court.

Section 75, sub. s(1), provides that the possession of the property, the farm in this case, shall remain during the three-year period in the debtor "subject to all existing mortgages, liens, pledges, or encumbrances. All such existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such mortgages, liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors, as their interests may appear."

That the execution of the crop mortgage and the adjudication in bankruptcy both occurred before the 1941 crop was planted is conceded in the briefs. The appellee also concedes that under the rule in the case of In re Borchert, D.C.Cal., 47 F.Supp. 387, the lien of the mortgage would not have attached to the crop in bankruptcy under these circumstances were it not for the law of North Dakota where the land is situated. The Supreme Court of North Dakota holds that a crop mortgage executed before the crop is planted exists in praesenti, and that even though the crop does not come into existence until after the adjudication of the mortgagor to be a bankrupt the lien may be enforced. Thompson Yards v. Richardson, 51 N.D. 241, 199 N.W. 863; Union Nat. Bank of Minot v. Lenton, 54 N.D. 262, 209 N.W. 350.

■ These decisions antedate the enactment of § 75, sub. s. They do not determine the effect of § 75 upon a crop mortgage. While the rights of lienholders are governed by state laws and are protected by the Fifth Amendment, in bankruptcy these rights may be affected in many ways. Wright v. Union Central Ins. Co., 304 U.S. 502, 517, 58 S.Ct. 1025, 42 L.Ed. 1490. All such rights are subject to the operation of § 75, sub. s to effect the rehabilitation of the farmer mortgagor. Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 470, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. Section 75, sub. n provides that the filing of the farmer-debtor's petition "shall immediately subject the far-

mer and all his property, * * * for all the purposes of this section, to the exclusive jurisdiction of the court."

Section 75, sub. s(2) provides that during the three-year period "the debtor shall be permitted to retain possession of * * * his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental * * * the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property." It further provides that the part of the rent remaining after paying taxes and upkeep shall "be distributed among the secured and unsecured creditors, and applied to their claims, as their interests may appear." And all this procedure is to be consummated "with a view to his [the debtor's] financial rehabilitation."

 Clearly the rights of appellee under its crop mortgage are neither greater nor different than its rights under its real estate mortgage. These rights and the property covered by each mortgage must be administered by the court under the Act so as "to conserve the security" for the protection of the creditors and "with a view to" the "financial rehabilitation" of the debtor. In a recent decision (Klevmoen v. Farm Credit Administration, 8 Cir., 138 F.2d 609, 611, decided November 9, 1943) this court, in construing the Act, said: * * * the order of the District Judge in this instance is erroneous. In the first place, it is not in harmony with the declared and manifest design of the applicable legislation for the rehabilitation of a farm debtor. To that end it is provided that he shall remain in possession of his property under the supervision and control of the court, section 203 subsection s(1) and (2), provided he pays a reasonable rental for it, section 203 sub. s(2). Paying that rental, in respect, now, of real estate, he is entitled, in our opinion, to so much of the products of the soil as remains above the rental, first to defray the expense of its planting, development and marketing, and secondly, in theory at least, as an instrument of redemption. Otherwise the possibility of redemption could exist alone in a fortuitous increase in the value of his land. Adair v. Bank of America National Trust & Savings Ass'n, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889; Wright v. Vinton Branch, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; In re Borchert, D.C. Cal., 47 F.Supp. 387."

If in the present case the crop mortgage covered all of the 1941 crop the construction placed upon the Act by the lower court would completely defeat the purpose of Congress. The principle is the same whether the mortgage covers 25% of the crop or all of it. In the Adair case, supra, the holder of the real estate mortgage also held a crop mortgage on all the crops grown upon the same land, and the Supreme Court held that the proceeds of the crops were subject to expenditures for the production, harvesting, preservation, and cultivation of the crops. In that case the estate was being administered under § 75, sub. s. There, as here, the same party owned both the real estate mortgage and the crop mortgage. The mortgagee in such a case receives the full benefit of the conservation of the security. Especially is this true when as here the crop mortgage was given and received as "additional security" for the debt secured by the mortgage on the land. In the instant case such benefits were substantial. They included the rentals in excess of taxes and upkeep and the value of the land enhanced by payment of the taxes and upkeep from rentals.

 We think, and so hold, that a crop mortgage, held by the owner of a mortgage on the land which produces the crop, is subject to the administrative proceedings under § 75, sub. s, and that such a mortgage does not deprive the bankrupt of the proceeds of the crop in excess of the rental fixed by the court for possession of the mortgaged property. The rights of the holder of a valid and subsisting crop mortgage which legally attached to the crop in bankruptcy are preserved and included in the rentals and will be realized in the distribution of the excess rentals to the "secured and unsecured creditors, as their interests may appear."

 That part of the order requiring the appellant to pay into court 25% of the 1941 crop, in addition to the rental, to be applied upon the crop mortgage is reversed, and, as so modified, the order appealed from is affirmed.